Tami Smason (SBN: 120213)
 tsmason@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Telephone: 213.972.4647
Facsimile: 213.486.0065

F. Lane Heard III (admitted pro hac vice)
 lheard@wc.com
Enu Mainigi (admitted pro hac vice)
 emainigi@wc.com
J. Andrew Keyes (admitted pro hac vice)
 akeyes@wc.com
Holly Conley (admitted pro hac vice)
 hconley@wc.com
Benjamin Hazelwood (admitted pro hac vice)
 bhazelwood@wc.com
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202.434.5000 / Facsimile: 202.434.5029

*Attorneys for Defendant CaremarkPCS Health, L.L.C.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B. AMBURGEY and ALICE WASHINGTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAREMARKPCS HEALTH, L.L.C., and DOES 1–10,<br><br>Defendants. | **Case No.: 8:17-CV-183 CJC KES**<br><br>**REPLY IN SUPPORT OF CAREMARKPCS HEALTH, L.L.C.'S MOTION TO DISMISS**<br><br>**[REDACTED VERSON OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**<br>Date: September 25, 2017<br>Time: 1:30 PM<br>Courtroom: 9B<br>Assigned to Hon. Cormac J. Carney |

1

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

I.     PLAINTIFFS LACK STANDING. ...............................................................2

    A.     Amburgey Lacks Standing....................................................................2

        1.     Amburgey Lacks Standing To Sue about Enbrel. ......................2

        2.     Amburgey Lacks Standing To Sue about Orencia. ...................5

    B.     Washington Lacks Standing...................................................................9

    C.     Amburgey and Washington Lack Standing To Bring Claims Regarding Drugs They Did Not Receive. ...........................................10

II.    THE COURT LACKS PERSONAL JURISDICTION WITH RESPECT TO WASHINGTON'S CLAIMS. ..................................................................12

    A.     The Court Lacks General Jurisdiction. ................................................13

    B.     The Court Lacks Specific Jurisdiction over Washington's Claims. ....15

III.   PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ..................................................................................17

    A.     Amburgey Fails To Allege Reliance....................................................17

    B.     Washington Fails To Allege that Any Representation Materially Caused Her Loss..................................................................................20

    C.     The Complaint Fails To Allege a Misrepresentation to "The Public."..................................................................................................21

    D.     The Complaint Fails To Allege Anything about Other Drugs...........22

CONCLUSION..................................................................................................23

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

**PAGE (S)**

## FEDERAL CASES

*B2 Opportunity Fund, LLC v. Trabelsi*, 2017 WL 3707383
(D. Mass. Aug. 28, 2017) ................................................................... 17

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ..................................... 15

*Bates v. Wisc. Dep't of Workforce Dev.*, 375 F. App'x 633
(7th Cir. 2010) ................................................................................... 22

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ........................... 6, 9

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) ................ 16, 17

*Cousin Subs Sys. Inc. v. Better Subs Dev. Inc.*, 2011 WL 4585541
(E.D. Wis. Sept. 30, 2011) .................................................................. 22

*Cuong Nhut Chung v. L & R Fine Fashions, Inc.*, 2012 WL 12887559
(C.D. Cal. Feb. 1, 2012) ....................................................................... 4

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ....................................... 14

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ...................... 10

*Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ....................... 10

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) (per curiam) .............. 15

*Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004) ................................ 2

*ECA, Local 134 IBEW Joint Pension Tr. of Chic. v. JP Morgan Chase
Co.*, 553 F.3d 187 (2d Cir. 2009) ....................................................... 21

*Eliahu v. Israel*, 2015 WL 981517 (N.D. Cal. Mar. 3, 2015) ..................... 4

*Estrada v. Johnson & Johnson*, 2015 WL 1440466 (E.D. Cal. Mar. 27,
2015) .................................................................................................. 7

*Friedman v. Mercedes Benz USA LLC*, 2013 WL 8336127 (C.D. Cal.
June 12, 2013) ................................................................................... 19

# TABLE OF AUTHORITIES (CON'T.)

**PAGE (S)**

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017) .......................................................... 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ................. 14

*Granfield v. Nvidia Corp.*, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ........... 10, 11

*Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100 (N.D. Cal. 2013) .................. 12

*In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254 (E.D. Pa. 2012) ............................................................................................................... 9

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604 (D.N.J. July 10, 2009) ............................................................. 7

*In re Toyota Motor Corp. Hybrid Brake Marketing, Sales Practices & Prods. Liab. Litig.*, 915 F. Supp. 2d 1151 (C.D. Cal. 2013) .................................. 5

*Insight Invs., LLC v. Norris Technologies, LLC*, 2015 WL 12791749 (C.D. Cal. Aug. 13, 2015) .................................................................12, 13, 14, 15

*Jordan v. Bayer Corp.*, 2017 WL 3006993 (E.D. Mo. July 14, 2017) ....................... 17

*Lake v. Lake*, 817 F.2d 1416 (9th Cir. 1987) ........................................................... 15

*Lanovaz v. Twinings N Am., Inc.*, 2014 WL 46822 (N.D. Cal. Jan. 6, 2014) ............................................................................................................... 18

*Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267 (C.D. Cal. 2016) ...................... 6

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .............................................. 2, 10

*McCarthy v. United States*, 850 F.2d 558 (9th Cir. 1988) ......................................... 4

*Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119 (E.D. Wisc. 2016) ........................... 21

*Myers-Armstrong v. Actavis Totowa, LLC*, 2009 WL 1082026 (N.D. Cal. Apr. 22, 2009), *aff'd* 382 F. App'x 545 (9th Cir. 2010).............. 8, 9, 10

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987) ....................... 16

*Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026 (C.D. Cal. 2013) ................................ 9

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES (CON'T.)

**PAGE (S)**

*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002) .............................6, 7, 10

*Robertson v. Qadri*, 2008 WL 818529 (N.D. Cal. Mar. 25, 2008) ...............................4

*Ryan v. Brookdale Int'l Sys., Inc.*, 230 F. App'x 366 (5th Cir. 2007)..........................6

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ...................................2

*Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777 (9th Cir. 2012) .....................17

*Siegfried v. Boehringer Ingelheim Pharm., Inc.*, 2017 WL 2778107
    (E.D. Mo. June 27, 2017) ...................................................................................17

*Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659 (W.D. Wis.
    2009) ..................................................................................................................20

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .......................................................2, 10

*Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075 (N.D. Cal. 2017)..................18

*Travelers Indem. Co. v. Cephalon*, 32 F. Supp. 3d 538 (E.D. Pa. 2014) ....................6

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006) ......................17

*United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805 (11th Cir.
    2015) ....................................................................................................................4

*Walden v. Fiore*, 134 S. Ct. 1115 (2014)....................................................................15

*Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014) ............................6, 9

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) ................................15

*Wilson v. Frito-Lay N. Am., Inc.*, 2013 WL 1320468 (N.D. Cal. Apr. 1,
    2013) ..................................................................................................................22

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d
    1199 (9th Cir. 2006) ..........................................................................................16

*Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247 (2d
    Cir. 2000)..............................................................................................................4

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES (CON'T.)</u>

<u>**PAGE (S)**</u>

## STATE CASES

*Bullock v. Philip Morris USA, Inc.,* 159 Cal. App. 4th 655 (2d Dist. 2008) ............................................................................................... 19

*Grinnell v. Charles Pfizer & Co.*, 274 Cal. App. 2d 424 (1st Dist. 1969) ................. 19

*K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 732 N.W.2d 792 (Wis. 2007) ........................................................................... 20, 22

*Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) ............................................... 19

*Princess Cruise Lines, Ltd. v. Super. Court,* 179 Cal. App. 4th 36 (2d Dist. 2009) ......................................................................................... 18

*Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233 (Wis. 2004) ........................... 21

*Toole v. Richardson-Merrell Inc.*, 251 Cal. App. 2d 689 (1st Dist. 1967) ................. 19

## OTHER AUTHORITIES

Cal. Civ. Code §§ 1770(a)(2), (5), (6), (7), (16) ............................................ 20

Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1068 (4th ed. 2017) ....................................................................... 17

Fed. R. Civ. P. 4(k)(1)(A) ....................................................................... 16, 17

Fed. R. Civ. P. 12(b)(1) ........................................................................... 2

Fed. R. Civ. P. 12(b)(6) .......................................................................... 23

Local Civil Rule 56-1 .............................................................................. 5

Local Civil Rule 56-2 .............................................................................. 5

Local Civil Rule 56-3 .............................................................................. 5

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

1

# INTRODUCTION

Plaintiffs' Opposition does not offer a cure for the numerous, fatal defects in the Second Amended Complaint:

*First*, the Court lacks subject matter jurisdiction over the entire case. Amburgey persists in claiming to have received Enbrel from Defendant[1]; she did not, and she lacks standing to pursue that claim. The remaining claims allege only a vague "risk" that drugs received by Amburgey and Washington *may* have been affected by Defendant's shipping practices. This conjecture, absent actual economic injury, is insufficient to establish standing. Finally, Plaintiffs fail to show how they suffered any injury related to the hundreds of other drugs they never purchased but about which they purport to sue.

*Second*, Plaintiffs do not meaningfully contest Defendant's argument that the Court lacks personal jurisdiction with respect to Washington's claims. There is no reasonable argument that CaremarkPCS Health, L.L.C. ("Caremark") or ProCare Pharmacy Direct, L.L.C. ("ProCare") are subject to general jurisdiction in California, and Plaintiffs make no effort to explain how the Court may have specific jurisdiction over a claim regarding the shipment of a drug from a Pennsylvania pharmacy to a Wisconsin resident.

*Third*, Plaintiffs' Opposition only confirms that they failed to plead key elements of their legal claims. The complaint alleges a series of alleged "misrepresentations," but neither Plaintiff claims to have seen them, much less to have been adversely affected by relying on them, and the Opposition now appears to

---

[1]   This Reply uses the generic term "Defendant" because Plaintiffs appear to be back-tracking from their previous agreement that ProCare Pharmacy Direct, L.L.C. should be substituted as the sole defendant in this case, in place of CaremarkPCS Health, L.L.C., Motion at 1 n.1; Opp'n at 1 n.1, based on their continued misunderstanding of Caremark's operations. The arguments in this Reply are not impacted by which entity Plaintiffs ultimately settle on, however.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

argue that those "misrepresentations" are really just instructions.  Washington further fails to plead that the alleged "misrepresentations" on which she premises her claim were made to "the public" as required by Wisconsin law.  Finally, even if the Plaintiffs had standing to pursue claims regarding drugs they never purchased, they plead no facts regarding those drugs that could support a plausible claim for relief.

## ARGUMENT

## I.   PLAINTIFFS LACK STANDING.

Plaintiffs' Opposition does nothing to resolve the fundamental standing problems that plague their claims.  The case should therefore be dismissed in its entirety for lack of subject matter jurisdiction.

### A.   Amburgey Lacks Standing.

#### 1.   Amburgey lacks standing to sue about Enbrel.

Defendant made a factual challenge to Amburgey's standing under Rule 12(b)(1) and presented evidence showing "that CVS has *never* shipped Enbrel to Amburgey from *any* of its specialty pharmacies."[2]  Amburgey therefore lacks standing to sue Defendant about Enbrel because she did not "suffer[] an injury in fact . . . that is fairly traceable to the challenged conduct of the defendant."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see, e.g.*, *Easter v. Am. W. Fin.*, 381 F.3d 948, 961–62 (9th Cir. 2004) (named plaintiffs bringing class claims regarding lending violations lacked standing to sue "those trusts which have never held a named plaintiff's loan").

In response to Caremark's factual challenge, Amburgey was required to "furnish affidavits or other evidence necessary to satisfy [her] burden of establishing subject matter jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  She proffered her own declaration, which said that she remembers receiving Enbrel from CVS on a monthly basis in 2014 and 2015, but she supplied no

---

[2]   Mot. at 7 (citing First Peterman Decl. ¶¶ 3–7).

concrete proof to support her recollection.[3] She does not have her Enbrel

prescription, nor does her doctor, apparently because her doctor's records do not "go

back further than 2015"—although Amburgey fails to explain why those records do

not include anything to substantiate Amburgey's claimed receipt of Enbrel *in* 2015.[4]

The only documentation that Amburgey has submitted is a printout of "payments

[from Amburgey's Flexible Spending Account] in the amount of $150.00 to

CVS/Caremark that were made on April 15, 2015, and August 15, 2015."[5] But,

notably, she does ***not*** claim that those payments were for Enbrel; she says only that

"[t]he two $150.00 payments predate my purchases of Orencia from

CVS/Caremark."[6] In fact, those payments ███████████████████████████

██[7]

     In short, all Amburgey has submitted to meet her "burden of establishing

subject matter jurisdiction," *Meyer*, 373 F.3d at 1039, are her own vague and

unsupported memories of receiving Enbrel.[8] These are contradicted by Defendant's

---

[3]  Declaration of Bunni Amburgey ("Amburgey Decl.") ¶¶ 3–6, 8.

[4]  *Id.* ¶ 13.

[5]  *Id.* ¶ 11; *see* D.E. 42-1 (Ex. A to Amburgey Decl.).

[6]  Amburgey Decl. ¶ 12.

[7]  ███████████████████████████████████████████████ *See*
Second Peterman Decl. ¶ 6 (attached hereto as Exhibit 1). ███████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████

[8]  Amburgey notes that her "insurance account with Blue Cross Anthem may have
been associated with [her] husband, Guy Dale Amburgey." Amburgey Decl. ¶ 7.
To the extent she is implying that records of drug shipments to her may have been
under her husband's name, this is a misunderstanding of the way that such records
work. ██████████████████████████████████████████████████████
████████████████████████████████████

---

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

records.[9]  Thus, she has not met her burden of establishing that this Court has subject-matter jurisdiction.  *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("conclusory allegations in [an] affidavit are not sufficient to create a material issue of fact" such that an evidentiary hearing was unnecessary and the Court could find on the papers that it lacked jurisdiction).

Even if Amburgey's declaration were enough to create a dispute of fact, Amburgey is wrong to say that the jurisdictional issue must be deferred until summary judgment.  "[W]hen the factual basis for a court's subject matter jurisdiction is challenged, there are few procedural limitations, and the court may consider conflicting evidence, affidavits, and documents, and even hold a limited evidentiary hearing."  *Eliahu v. Israel*, 2015 WL 981517, at *3 (N.D. Cal. Mar. 3, 2015); *see also Cuong Nhut Chung v. L & R Fine Fashions, Inc.*, 2012 WL 12887559, at *4 (C.D. Cal. Feb. 1, 2012) ("The court . . . 'may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.'" (quoting *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988))).  Although it is within this Court's "discretion whether to hold an evidentiary hearing," *Robertson v. Qadri*, 2008 WL 818529, at *4 n.4 (N.D. Cal. Mar. 25, 2008), Caremark submits that an evidentiary hearing is unnecessary because Amburgey has proffered only vague and conclusory assertions that are contradicted by the record.[10]

In any event, if summary judgment is the appropriate procedural mechanism for resolving the issue, Defendant made a request, in the alternative, for partial summary judgment in its Motion and attached a Statement of Uncontroverted Facts

---

[9]  First Peterman Decl. ¶¶ 3–7.

[10]  To the extent that Amburgey thinks that the Court may not grant Defendant's Motion absent an evidentiary hearing, she notably did not request one.  *See United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) (rejecting as "forfeited" the argument that the district court erred in granting a Rule 12(b)(1) motion without holding an evidentiary hearing where the party "failed to request an evidentiary hearing or further discovery in the district court").

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

and Conclusions of Law pursuant to Local Civil Rule 56-1.  Notably, Amburgey did not file a Statement of Genuine Disputes, as required under Local Civil Rule 56-2. Accordingly, by rule, if she is right that her standing should be resolved on summary judgment, she has conceded the truth of all facts contained in Defendant's Statement of Uncontroverted Facts.[11]

### 2.    Amburgey lacks standing to sue about Orencia.

"It is well established in the law that a plaintiff cannot prevail on a claim unless he has been injured or damaged."  *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*, 915 F. Supp. 2d 1151, 1155 (C.D. Cal. 2013). Although Amburgey received shipments of Orencia from Defendant, she never explains how she was injured by the alleged defects in Defendant's shipping process. Indeed, her allegations make clear that she has no idea whether the Orencia doses administered to her were at all affected—i.e., whether they were too hot or too cold or just right.  The Orencia was sent not to her, but to her doctor.  She alleges that "some shipments" to the doctor arrived "frozen and/or too warm,"[12] and the doctor later administered to her Orencia "dispensed and shipped by Caremark."[13]  But Amburgey does not allege—and has no idea—whether the Orencia that was administered to her was part of the "some shipments" that were "frozen and/or too warm" when her doctor received them.

Both the Complaint and Plaintiffs' Opposition claim, at most, that Amburgey were exposed to a *risk* that "some shipments" may have reached temperatures outside

---

[11]    *See* Local Civ. R. 56-3 ("[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' *and* (b) controverted by declaration or other written evidence filed in opposition to the motion."  (emphasis added)).

[12]    Compl. ¶ 69.

[13]    *Id.*

---

5

the prescribed storage range.  For that reason alone, Amburgey lacks standing, because she does not allege any facts that connect that **risk** to any actual injury. Standing cannot be premised "on a hypothetical risk."  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960–62 (9th Cir. 2009); *see also Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030–31 (8th Cir. 2014) (standing is not available when a plaintiff claims to have "overpaid" for something that "might not be" what it was represented to be); *Ryan v. Brookdale Int'l Sys., Inc.*, 230 F. App'x 366, 368 (5th Cir. 2007) (per curiam) (no standing where "there is no allegation of injuries arising from any defects in the product; in fact it is unknown if [the products] were in fact defective" and plaintiff's "only allegation of injury is the money he spent to purchase and ship the product"); *Travelers Indem. Co. v. Cephalon*, 32 F. Supp. 3d 538, 548 (E.D. Pa. 2014) (standing cannot be premised on "[t]he fact that a drug poses even a significant possibility of harm" because that "does not, by itself, establish injury-in-fact to the party paying for the drug" (internal quotation marks omitted)).

Amburgey does not allege that she suffered personal-injury harm.  As for economic harm, neither the Complaint nor the Opposition articulate a coherent theory.[14]  Because she was not aware of any defect in the Orencia shipped to her doctor (if there was any), she did not pay for a new shipment or a substitute medication.  As for the claim that she did not get what she paid for,[15] she never explains what benefit of her bargain she did not receive.  She does not allege that Orencia harmed her or that it didn't work.

Such claims cannot support standing.  "A number of courts have rejected for lack of standing or injury similar attempts to recast no-injury products-liability claims . . . as consumer fraud claims for contract-like economic damages . . . ."  *Lassen v.*

---

[14]  *Id.* ¶¶ 71, 124–127.

[15]  Opp'n at 4 ("Amburgey's injury was complete when she paid for and received improperly shipped and stored Orencia.").

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

*Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1281 (C.D. Cal. 2016).  Most prominently, in *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002), the Fifth Circuit found that the plaintiff lacked standing to sue on consumer-protection claims about a drug that had been voluntarily withdrawn from the market after long-term users suffered liver problems.  *Id.* at 316–17.  The plaintiff did not claim to have suffered any physical harm, and did not allege that the drug was ineffective, but claimed that, had Wyeth provided different warnings about the risks of long-term use, she would not have purchased the drug.  *Id.* at 319.  The Fifth Circuit rejected this benefit-of-the-bargain theory because, "[b]y plaintiffs' own admission, Rivera paid for an effective pain killer, and she received just that—the benefit of her bargain."  *Id.* at 320; *see also Estrada v. Johnson & Johnson*, 2015 WL 1440466, at *3 (E.D. Cal. Mar. 27, 2015) ("If a plaintiff received the benefit-of-the-bargain because the product performed as promised, the plaintiff does not have an injury to satisfy Article III standing."); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604, at *10 (D.N.J. July 10, 2009) (noting "the many well-reasoned decisions in which courts have held that purchasers of pharmaceutical products have no private cause of action where they receive the benefit of their bargain in the form of effective drugs").

It is telling that Amburgey asserts only that the drugs she used were adulterated in "law,"[16] not that they were adulterated in fact.  Adulteration-in-law describes a violation of regulatory requirements without more, as distinguished from adulteration-in-fact, which describes a violation that renders the drug harmful or ineffective.[17]  In alleging adulteration-in-law, Amburgey tacitly concedes that she suffered no concrete injury.

---

[16]   Compl. ¶¶ 71, 112.

[17]   The Complaint elides this distinction, implying that a single-degree deviation from a ten-degree storage window instantly renders a drug adulterated.  Anyone who has ever picked up a prescription drug at a store and then driven it home in their

(Footnote Cont'd on Following Page)

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

A mere claim of theoretical "adulteration" is insufficient to confer standing, as the Northern District of California held in *Myers-Armstrong v. Actavis Totowa, LLC*, 2009 WL 1082026 (N.D. Cal. Apr. 22, 2009), *aff'd*, 382 F. App'x 545 (9th Cir. 2010).  There, a pharmaceutical manufacturer conducted a voluntary recall of 107 different drugs "due to the company's failure to meet industry or Food and Drug Administration good manufacturing practices." *Id.* at *1.  An individual who had used one of those drugs brought California consumer-protection claims, asserting that the drugs "should not have been offered for sale in California because the products were adulterated, were not manufactured according to . . . requirements, and were not otherwise fit for the purposes intended." *Id.*  As in this case, "there [we]re no allegations that plaintiff ever had a side effect from the [drug] or that it did not work as intended." *Id.* at *4.  The Court therefore dismissed the case for lack of standing:

> That the [drug] was adulterated due to a lack of compliance with [good manufacturing practice] requirements is not enough, without more, to state a claim.  A plaintiff must allege an actual ***manifestation***

---

(Footnote Cont'd From Previous Page)

car knows why this cannot be true.  The lifecycle of any drug involves long periods when the drug is in storage and tight environmental controls are in place.  At some point, a drug has to get to its ultimate consumer.  Accordingly, it leaves storage, going from the manufacturer through a distribution chain and ultimately to the customer.  Distribution operations require that refrigerated drugs experience brief exposures to warmer temperatures as they are unloaded in bulk from delivery trucks, separated into individual units, placed in warehouse refrigerators, removed from warehouse refrigerators during order fulfillment, rolled down conveyor belts, and repackaged for individual shipment and delivery by commercial carriers.  For these and countless other reasons, drug manufacturers conduct extensive testing to determine the "stability" of each drug they sell during such temperature fluctuations.  A drug that is FDA-approved to be *stored* at a 36–46° F range is supported by extensive "stability data" which gives comfort that the drug will remain safe and effective (i.e., "stable") during the inevitable temperature fluctuations that occur in the distribution chain between manufacturer and end consumer.  Accordingly, even if a drug in transit experienced a fluctuation from its FDA-approved *storage* range, stability data exists to support its continued efficacy.

---

8

of a defect *that results in some injury or rational fear of future injury* in order to state cognizable claims.

*Id.* (emphases added).  The bare allegation that the drugs were "adulterated" as a matter of law because they allegedly did not comply with a particular FDA requirement therefore cannot be a basis for economic injury.  *See also Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1034 (C.D. Cal. 2013) ("A plaintiff lacks standing when she purchased a product, later found that it contained a potentially harmful substance, but suffered no ill effects from use of the product."); *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 271 (E.D. Pa. 2012) ("The failure to be reimbursed for products that were not defective is insufficient to show an invasion of a legally protected interest."  (internal quotation marks omitted)).

## B.      Washington Lacks Standing.

Washington, too fails to explain how she was injured by the defects she alleges in Defendant's shipping process.  Washington's Enbrel was sent to her home and, although she has received it for years, she has never perceived any defect.  She admits that the temperature of the drugs on receipt was "[u]nbeknownst to her at the time."[18]  Like Amburgey, she claims that "some shipments of Enbrel" were "frozen and/or too warm,"[19] bur apparently does not now if that is true of the doses she used.  Therefore, like Amburgey, Washington lacks standing because she seeks to premise her standing "on a hypothetical risk."  *Birdsong*, 590 F.3d at 960–62; *see also, e.g.*, *Wallace*, 747 F.3d at 1030–31 (no standing based on claim to "overpaid" for something that "might not be" what it was represented to be).

Also like Amburgey, Washington fails to allege a cognizable injury.  She characterizes her injuries as economic in nature,[20] but she does not assert that she

---

[18]   Compl. ¶ 132.

[19]   *Id.*

[20]   *Id.* ¶¶ 71, 124–127.

---

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

suffered any personal injury or used a dose of Enbrel or Orencia that was ineffective. Her claim, too, lacks standing.  *See, e.g.*, *Rivera*, 283 F.3d at 319–20; *Myers-Armstrong*, 2009 WL 1082026, at *1, *4.

### C.    Amburgey and Washington Lack Standing To Bring Claims Regarding Drugs They Did Not Receive.

Although Amburgey purchased only Orencia and Washington purchased only Enbrel, they each purport to bring claims regarding hundreds of other drugs.[21]  Article III requires that Plaintiffs show that they "suffered an injury in fact," *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560), for "'each claim [they] seek[] to press,'" *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  Plaintiffs, however, have alleged no injury related to these hundreds of other drugs.  Plaintiffs lack standing to sue about the drugs they did not even receive for the same reason they lack standing to sue about those they did receive:  They do not claim to have suffered any physical injury linked to the unpurchased drugs and do not assert that any of the unpurchased drugs were ineffective or had adverse side effects that caused either Plaintiff to lose out on the benefit of their bargain—indeed, for unpurchased drugs, there was no bargain. *See Rivera*, 283 F.3d at 319.

Plaintiffs do not dispute the principle that "'[a] plaintiff has standing to assert injury based on a defective product or false advertising only if the plaintiff experienced injury stemming from the purchase of ***that product***.'"  Mot. at 11 (quoting *Granfield v. Nvidia Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012)).  They argue instead that the framework for analyzing claims about unpurchased products does not apply because "[t]he 'product' at issue is Defendant's shipping and storing practices."[22]  According to Plaintiffs, their case is no different

---

[21]   Compl. ¶¶ 15, 19–20, 54; D.E. 8-1 (Exhibit 1 to First Amended Complaint).

[22]   Opp'n at 7.

from a hypothetical lawsuit against UPS alleging that "due to the company's negligence" a UPS truck caught fire and all of the packages were incinerated.[23]  In Plaintiffs' hypothetical, "a single plaintiff" could represent "the entire class of people who had packages in the truck" because the plaintiff himself (and every member of the class) had a package that was burned up.  But, here, Plaintiffs have not alleged that they (or anyone else) used drugs from a shipment that was too hot or too cold.

In any event, this Court need not wrestle with Plaintiffs' inapposite hypothetical.  In *Granfield*, the plaintiff alleged that she purchased a computer containing an Nvidia GeForce 8600M GPU, but sought also to assert claims based on defects in eleven additional models of Nvidia GPUs.  2012 WL 2847575 at *6.  The court struck all allegations relating to products not purchased by the plaintiff, holding that "since Plaintiff does not allege any injury stemming from the purchase or use of these other models, [she] lacks standing to assert claims based on alleged defects in them."  *Id*.  The same analysis applies here.  Plaintiffs have "standing to assert injury based on a defective product or false advertising only if the plaintiff experienced injury stemming from the purchase of that product."  *Id*.  Under this rule, Plaintiffs lack standing to sue about the hundreds of other drugs they never purchased.

Even under decisions that have allowed standing to sue about substantially similar products, however, Plaintiffs fall far short.  The Complaint does not allege that the other drugs are substantially similar to Enbrel or Orencia.  And what little the Complaint does say about the various refrigerated drugs suggests that Enbrel is distinctive and that the other drugs may be distinctive in their own ways.  Contrary to Plaintiffs' suggestion that "all the Temperature Sensitive Medications have substantively identical FDA-mandated shipping and storage requirements" and "must all be maintained between 36 and 46 degrees Fahrenheit,"[24] the Complaint says that

---

[23]  *Id*. at 8.

[24]  Opp'n at 7.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Enbrel is shipped in 28-day quantities only (because the manufacturer requires it) and that, if the proper temperature range is not maintained, only the last 14-days' supply should be discarded.  The first 14 days' supply can still be used.[25]  Absent comparable information about the other drugs, one cannot just assume that they are shipped in the same quantities with similar instructions for use.[26]

## II.   THE COURT LACKS PERSONAL JURISDICTION WITH RESPECT TO WASHINGTON'S CLAIMS.

Washington appears to believe that the burden is on Defendant to establish the lack of personal jurisdiction,[27] but it is her "burden to establish the court's personal jurisdiction."  *Insight Invs., LLC v. Norris Techs., LLC*, 2015 WL 12791749, at *2 (C.D. Cal. Aug. 13, 2015).  She fails to meet that burden.

---

[25]  Compl. ¶ 51.

[26]  The Court can take judicial notice of the fact that many of the drugs listed in their Complaint have widely divergent temperature-storage requirements.  *See, e.g., Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013).  The powder form of Avonex, for example, "can be stored at 25°C (77°F) for a period of up to 30 days" while the prefilled syringe "can be stored at ≤25°C (77°F) for a period up to 7 days."  Different still is Betaseron, which FDA directs be stored "at room temperature 68°F to 77°F (20°C to 25°C)," with "[e]xcursions of 59°F to 86°F (15°C to 30°C) . . . permitted for up to 3 months."  Further, Kaletra comes in tablet form, which should be stored "at 20°–25°C (68°–77°F), with fluctuations permitted to 15°-30°C (59° to 86°F), or as an oral solution, which is recommended for storage "at 2°-8°C (36°-46°F) until dispensed, but, "[i]f stored at room temperature up to 25°C (77°F), oral solution should be used within 2 months."  *See* AVONEX Full Prescribing Information (rev. Dec. 2015), FDA Access Data, https://www.accessdata.fda.gov/drugsatfdadocs/label/2015/103628s5258lbl.pdf; BETASERON Full Prescribing Information, FDA Access Data (rev. Apr. 2016), https:// www.accessdata. fda.gov/ drugsatfda _docs/label/2016/103471s5157lbl.pdf; KALETRA Full Prescribing Information, FDA Access Data (rev. Nov. 2013), https://www.accessdata.fda.gov/drugsatfda_docs/label/2013/021251s046_021906s039lbl.pdf.

[27]  *See* Opp'n at 10 (suggesting that "a more reliable record is needed for the Court to make a determination" of general jurisdiction).

---

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

## A. The Court Lacks General Jurisdiction.

Washington has not "demonstrate[d] facts" that support the exercise of general jurisdiction, *id.*, but has tried to obfuscate.

Prior to moving to dismiss, Caremark informed Plaintiffs that it is not the proper defendant, because all of the shipments that Plaintiffs received came from the Monroeville specialty pharmacy,[28] which is owned and operated by ProCare.[29] Caremark therefore suggested—and Plaintiffs agreed—that ProCare should be substituted as the sole Defendant.[30] The Motion to Dismiss argued that the Court lacks general jurisdiction over ProCare (and, in an abundance of caution, made the same argument as to Caremark) because neither ProCare nor Caremark has any connection to California. ProCare is an Ohio corporation with its principal place of business in Pennsylvania and no California operations or employees[31]; Caremark is a Delaware corporation with its principal place of business in Arizona and no California operations or employees.[32] Thus, neither company has any connection to California, much less contacts that are "'so continuous and systematic as to render [it]

---

[28] Washington concedes that her shipments all came from Monroeville, Pennsylvania, Compl. ¶ 31, and Caremark has previously confirmed this fact. *See* First Peterman Decl. ¶ 8. Amburgey's allegation that she received Enbrel from the specialty pharmacy in Redlands, California, Compl. ¶ 28, is irrelevant because she lacks standing to pursue that claim, having never received Enbrel from any CVS specialty mail pharmacy. *See* Part I.A., *supra*. Although Amburgey makes no allegation regarding the origin of her Orencia shipments, Caremark has confirmed that they all came from Monroeville, Pennsylvania. First Peterman Decl. ¶ 7.

[29] First Moffatt Decl. ¶ 5.

[30] Mot. at 1 n.1.

[31] First Moffatt Decl. ¶¶ 5–6.

[32] *Id*. ¶ 4. The Motion To Dismiss contained a typographical error stating that Caremark's principal place of business is in Illinois. Mot. at 15. In fact, as the First Moffatt Declaration states, Caremark's principal place of business is in Arizona. First Moffatt Decl. ¶ 4.

---

essentially at home in [California]'" and subject it to general jurisdiction in the state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

As to ProCare, Plaintiffs do not argue that the Court has general jurisdiction, and thereby concede the issue.  *See Insight Invs.*, 2015 WL 12791749, at *2 ("Because the burden to demonstrate personal jurisdiction is on the plaintiff, and because Insight has not provided any argument as to why general jurisdiction might apply, only specific jurisdiction is at issue here." (citation omitted)).  As to Caremark, Plaintiffs retreat from their agreement to substitute ProCare[33] and argue that the Court *may* have general jurisdiction because Caremark operates the Redlands specialty pharmacy.  Putting aside the fact that the Redlands specialty pharmacy is irrelevant because no Plaintiff received a shipment from it, Plaintiffs misunderstand the facts. The State Board of Pharmacy license for the Redlands specialty pharmacy correctly lists "Caremark, L.L.C." as the owner and operator of the Redlands specialty pharmacy.[34]  But Caremark, L.L.C. is not the same entity as CaremarkPCS Health, L.L.C., the named defendant here.  They are distinct legal entities, and neither is owned—directly or indirectly—by the other.[35]  Accordingly, the sole "evidence" Plaintiffs proffer to support the exercise of general jurisdiction over CaremarkPCS Health, L.L.C. is irrelevant.

In sum, Caremark is not the proper defendant in this case.  Substitution of ProCare for Caremark would not change the bottom line, for the Court lacks general jurisdiction over either company.

---

[33]  Opp'n at 9–10.

[34]  Second Declaration of Thomas S. Moffatt ("Second Moffatt Decl.") ¶ 5 (attached hereto as Exhibit 2); *see* Opp'n at 10; *see* D.E. 43-1 (Ex. A to Pls.' Request for Judicial Notice).

[35]  *Id.*

**B.**     **The Court Lacks Specific Jurisdiction over Washington's Claims.**

Washington also fails to demonstrate that the Court has specific jurisdiction over her claims.  This is no surprise, as Washington is a Wisconsin resident who alleges that she received shipments of Enbrel in Wisconsin that were sent to her from a specialty pharmacy located in Monroeville, Pennsylvania.[36]  Her claims have nothing to do with California.

The only California-related contacts that are alleged in the Complaint relate to *Amburgey's* claims.[37]  To the extent that Washington means to rely on those contacts to support specific jurisdiction over her claims, a long line of Ninth Circuit authority holds otherwise.  *See, e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) ("In order for a court to have specific jurisdiction over a defendant, 'the defendant's ***suit-related conduct*** must create a substantial connection with the forum State.'"  (emphasis added) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014))); *Insight Invs.*, 2015 WL 12791749, at *3 (a plaintiff's "'causes of action must arise out of *that particular* purposeful contact of the defendant with the forum state'" (alteration omitted) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987))).  For decades, the Ninth Circuit has determined whether specific jurisdiction exists by "apply[ing] a 'but for' test," which "considers whether plaintiffs' claims would have arisen but for [the defendant's] contacts with California."  *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001) (per curiam) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)).  Washington's claims about the shipment of a drug from Pennsylvania to Wisconsin cannot meet this standard because they have nothing to do with California.

The Opposition ignores this authority altogether, and merely attempts to distinguish the Supreme Court's recent decision in *Bristol-Myers Squibb Co. v.*

---

[36]  Compl. ¶¶ 20, 31.

[37]  *Id.* ¶ 25.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

1    *Superior Court*, 137 S. Ct. 1773 (2017).  Although the preexisting Ninth Circuit

2    precedent that Washington never addresses is alone sufficient to foreclose the

3    exercise of specific jurisdiction here, Washington's argument about *Bristol-Myers*

4    *Squibb* is also wrong.

5              She suggests that the holding is limited to cases brought in state courts,[38]

6    quoting that "since our decision concerns the due process limits on the exercise of

7    specific jurisdiction by a State, we leave open the question whether the Fifth

8    Amendment imposes the same restrictions on the exercise of personal jurisdiction by

9    a federal court."  *Id.* at 1783–84 (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff &*

10   *Co.*, 484 U.S. 97, 102 n.5 (1987)).  The Court was not suggesting that *Bristol-Myers*

11   *Squibb* might not apply to diversity cases brought in federal court—what would be an

12   oddly inconsistent application of personal jurisdiction doctrine.  Rather, the Court

13   was recognizing that its holding in *Bristol-Myers Squibb* arguably called into

14   question the exercise of personal jurisdiction by a federal court in a state with no

15   connection to the claim, but a federal statute authorizes nationwide service of process.

16   *See Omni Capital*, 484 U.S. at 102 n.5 (leaving open consideration of "constitutional

17   issues" with the theory that the Fifth Amendment permits the exercise of personal

18   jurisdiction "based on an aggregation of the defendant's contacts with the Nation as a

19   whole" because applicable federal statute did not authorize nationwide service of

20   process).

21             This is not such a case.  "Where, as here, there is no applicable federal statute

22   governing personal jurisdiction, the district court applies the law of the state in which

23   the district court sits."  *Yahoo! Inc. v. La Ligue Contre Le Racisme et*

24   *L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (per curiam) (citing Fed. R.

25   Civ. P. 4(k)(1)(A)).  In this case, personal jurisdiction is analyzed from the

26   perspective of the state court.  *See* Charles Alan Wright & Arthur R. Miller, *Federal*

27   ───────────────

28   [38] Opp'n at 11.

*Practice & Procedure* § 1068 (4th ed. 2017) ("[W]hen a federal court relies on a state long-arm statute pursuant to Rule 4(k)(1)(A), personal jurisdiction must also be consistent with the Fourteenth Amendment due process principles that would apply in state court."); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006) ("Exercise of *in personam* jurisdiction over an out-of-state defendant is limited by the Due Process Clause of the Fourteenth Amendment."). Unsurprisingly, then, a number of recent decisions (not addressed by the Opposition) have applied *Bristol-Myers Squibb* to cases brought in federal court. *See, e.g.*, *B2 Opportunity Fund, LLC v. Trabelsi*, 2017 WL 3707383, at \*4 (D. Mass. Aug. 28, 2017); *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2017 WL 3600425, at \*6 (S.D.N.Y. Aug. 18, 2017).[39]

## III.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs' allegations also suffer from severe defects that independently require dismissal of certain claims.

### A.    Amburgey Fails To Allege Reliance.

Claims under the California consumer-protection laws require that a plaintiff show that she relied on an alleged ***misrepresentation***. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793–94 (9th Cir. 2012). Although an inference of reliance may arise under certain circumstances, any such inference is defeated when

---

[39]    Plaintiffs misread two post-*Bristol-Myers Squibb* decisions cited in Caremark's Motion as being premised on the narrower Missouri long-arm statute, rather than an application of *Bristol-Myers Squibb*. Opp'n at 11. Those decisions made clear that they were based on *Bristol-Myers Squibb*. *See Jordan v. Bayer Corp.*, 2017 WL 3006993, at \*4 (E.D. Mo. July 14, 2017) ("*Bristol-Myers Squibb Company . . . is dispositive of the specific personal jurisdiction issue in this case.*"); *Siegfried v. Boehringer Ingelheim Pharm., Inc.*, 2017 WL 2778107, at \*5 (E.D. Mo. June 27, 2017) ("Defendants' activities in Missouri and connections with the state do not meet the state long-arm requirements or the due process requirements of the Fourteenth Amendment.").

the record conclusively "establishes an actual lack of reliance." *Lanovaz v. Twinings N Am., Inc.*, 2014 WL 46822, at *3 (N.D. Cal. Jan. 6, 2014); *see also Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017) ("[A] plaintiff cannot use that presumption, if the evidence establishes an actual lack of reliance." (internal quotation marks omitted)).  Amburgey not only failed to allege that she relied on any representations by Defendant, she affirmatively pleaded facts showing that she did not rely on any such representations.

The Complaint alleges three misrepresentations: (1) a statement that the melting of the ice pack can be expected, along with a logo of a penguin crossed through; (2) a label that reads "REFRIGERATED"; and (3) a notice which states that the shipping procedure was "new and improved," "does even more" to keep drugs cold, and exceeds "industry standards."[40]  The Complaint makes clear that Amburgey did not rely on these alleged representations in connection with Enbrel (which, in any event, she did not receive from Defendant).  Had she relied, she would have assumed the Enbrel was in the defined temperature range.[41]  But she alleges that "[s]everal shipments" were frozen and she "allowed the Enbrel to thaw" before administering it.[42]  *See Princess Cruise Lines, Ltd. v. Super. Court*, 179 Cal. App. 4th 36, 43–44, 46 (Cal. App. 2d Dist. 2009) (reliance conclusively rebutted when plaintiffs admitted that alleged misrepresentations about the costs and operation of a service "made no difference to them").

As for Orencia, the Complaint alleges that it was shipped to her doctor, which means that she never saw the alleged misrepresentations.[43]  This does not matter, she

---

[40]  Compl. ¶¶ 100, 101, 104.

[41]  Compl. ¶ 100 (alleging that one misrepresentation was "[a] logo of a penguin crossed out, which represents that the Specialty Drug has not been frozen and should not be frozen").

[42]  *Id.* ¶ 47.

[43]  *Id.* ¶¶ 58, 69.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

now says, because she "was entitled to rely on her doctor's belief that the Orencia
was shipped and stored properly b[y] Defendant."[44]  But the Complaint does not
allege that Amburgey's doctor saw the alleged misrepresentations or relied on them.
That she purports to be asserting a claim for indirect misrepresentation does not
remedy this problem, for "indirect reliance requires pleading: (1) 'a misrepresentation
to a third party,' (2) that 'defendant intended or had reason to expect that the
substance of the communication would be repeated to the plaintiff and would induce
the plaintiff's reliance,' and (3) that 'plaintiff was misled when the substance of the
communication was repeated to plaintiff.'"  *Friedman v. Mercedes Benz USA LLC*,
2013 WL 8336127, at *4 (C.D. Cal. June 12, 2013) (quoting *Bullock v. Philip Morris
USA, Inc.*, 159 Cal. App. 4th 655, 676 (2d Dist. 2008)).  And the Complaint also does
not allege that Amburgey's doctor communicated the representations to her or that
Caremark intended he do so in order to induce her reliance.[45]

The Opposition, however, now calls into question whether Plaintiffs allege any
misrepresentation at all.  It argues the Penguin logo, REFRIGERATED label, etc.
were "storage instructions."[46]  Storage instructions are not misrepresentations about

---

[44]  Opp'n at 14.

[45]  Amburgey relies on a portion of the dissent in *Mirkin v. Wasserman*, 5 Cal. 4th
1082, 1112-13 (1993).  But the two California cases cited in that portion of the
dissent are different in an important respect.  Each case involved alleged
misrepresentations by a pharmaceutical manufacturer to a doctor about the nature
of a particular drug and included clear evidence that the doctor had received the
alleged misrepresentation and relied on it in prescribing the drug.  *See Grinnell v.
Charles Pfizer & Co.*, 274 Cal. App. 2d 424, 441 (1st Dist. 1969) (evidence from
which "the jury could infer that the language of the insert was read by the doctors .
. . and that they relied upon it in administering the vaccine to those who
participated in the program"); *Toole v. Richardson-Merrell Inc.*, 251 Cal. App. 2d
689, 707 (1st Dist. 1967) ("The doctor stated in his deposition that in prescribing
the drug he relied upon the literature supplied by appellant and that he talked to
appellant's salesmen on many occasions about the drug.").

[46]  Opp'n at 13.

---

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

the product being sold; rather, they are statements about how a product should be handled *in the future*.  Plaintiffs' claims have nothing to do with their own mishandling of Enbrel and Orencia based on inadequate or mistaken instructions.[47] In any event, Amburgey neither explains how she relied on any such instructions or, if she did, how her reliance on the instructions caused any injury.  And insofar as she depends on the fact that her doctor was the one who read and relied on the instructions, the Complaint does not allege that he did—or that he communicated those instructions to Amburgey.

### B.      Washington Fails To Allege that Any Representation Materially Caused Her Loss.

Defendant moved to dismiss Washington's consumer-protection claim under Wisconsin law because she did not plead any facts from which the Court could infer that she relied on any of the representations, or even that she noticed them.[48]  This is fatal to a Wisconsin consumer-protection claim, which requires that the alleged misrepresentation materially ***caused*** the plaintiff's loss.  *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 732 N.W.2d 792, 802 (Wis. 2007); *see also Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659, 663 (W.D. Wis. 2009) ("[T]he question is whether the representation . . . materially induce[d] the plaintiff's decision to act and [whether the] plaintiff would have acted in the absence of the representation."  (emphasis and internal quotation marks omitted)).  Washington misconstrues the argument as one related to the materiality of the alleged misrepresentations and cites an irrelevant decision related to the materiality standard

---

[47] Compl. ¶¶ 157, 178, 187–88.  The provisions of the CLRA under which Amburgey sues concern representations about the characteristics of the product being sold.  *See* Cal. Civ. Code §§ 1770(a)(2), (5), (6), (7), (16).

[48] Mot. at 22.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

1  for securities-fraud cases.[49]  Washington's failure to respond to Defendant's argument

2  concedes the issue, but, in any event, the lack of allegation that Washington even

3  noticed the alleged misrepresentations shows that they did not "materially induce[]

4  the plaintiff's decision to act."  *Id.* at 663 (emphasis and internal quotation marks

5  omitted).

6          Washington cannot base her claim on alleged material omissions, because the

7  Wisconsin consumer-protection law "does not purport to impose a duty to disclose,

8  but, rather, prohibits only affirmative assertions, representations, or statements of fact

9  that are false, deceptive, or misleading."  *Tietsworth v. Harley-Davidson, Inc.*, 677

10  N.W.2d 233, 245 (Wis. 2004); *see also, e.g.*, *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d

11  1119, 1126 (E.D. Wis. 2016) ("Wisconsin courts have placed certain limits on the

12  type of actionable representations that may be remedied under the statute," including

13  "that 'silence—an omission to speak—is insufficient to support a claim under Wis.

14  Stat. § 100.18(1).'" (brackets omitted) (quoting *Tietswoth*, 677 N.W.2d at 245)).

15  Plaintiffs did not dispute that this is an accurate statement of Wisconsin law.[50]

16  Accordingly, alleged failures to disclose cannot form the basis for any causation

17  argument.

18          **C.      The Complaint Fails To Allege a Misrepresentation to "The Public."**

19          In addition to her failure to allege causation, Washington also failed to allege

20  that the "misrepresentations" about which she sues were made to "the public" as

21  required by Wisconsin's consumer-protection law.  If "a particular relationship exists

22  between" the plaintiff and the defendant, any representations made to the plaintiff are

23  not actionable representations made to "'the public.'"  *K & S Tool & Die Corp.*, 732

24  N.W.2d at 800.  The rationale behind this rule is that there is a distinction between

---

26  [49]  Opp'n at 14 (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009)).

28  [50]  Opp'n at 15–16.

representations made to obtain new business (which are covered by the law) and representations made to existing business partners with whom a company has preexisting, regular dealings (which are not). *See Bates v. Wis. Dep't of Workforce Dev.*, 375 F. App'x 633, 636 (7th Cir. 2010) (affirming dismissal for failure to allege a representation to "the public" where "the undisputed facts demonstrate that the discussions about grant funding occurred only after Bates was accepted as a client of the [defendant]") (internal quotation marks omitted); *Cousin Subs Sys. Inc. v. Better Subs Dev. Inc.*, 2011 WL 4585541, at *10 (E.D. Wis. Sept. 30, 2011) (dismissing claim where representations "were not made to the public as a whole" but instead "were made on an individualized basis . . . through emails, phone conversations, and face to face meetings where the parties already had established an ongoing relationship"). The misrepresentations Washington alleges were not made to induce new business, because she was already a customer of Defendant—by her own allegation, her "insurer, UnitedHealthcare, *requires* her to obtain specialty drugs like Enbrel from Caremark's specialty pharmacy,"[51] and Amburgey received the representations (if she saw them at all) after the purchase was already complete. She therefore is not a member of "the public" whom the Wisconsin consumer-protection law is intended to protect.

### D.  The Complaint Fails To Allege Anything about Other Drugs.

Beyond their lack of standing, Plaintiffs failed to state plausible claims for relief regarding other drugs. The fact that Plaintiffs did not purchase the other drugs does not exempt them from the requirement that they plead facts suggesting that any plausible claim exists. *See, e.g.*, *Wilson v. Frito-Lay N. Am., Inc.*, 2013 WL 1320468, at *5–6 (N.D. Cal. Apr. 1, 2013) (plaintiffs failed to state a claim regarding unpurchased products where they alleged no "details about those products").

---

[51]  Complaint ¶ 31 (emphasis added).

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiffs argue that they have shouldered their pleading burden because "Enbrel, Orencia and the other Temperature Sensitive Medications at issue must be maintained between 36 and 46 degrees Fahrenheit during transport from the manufacturer to the patient and cannot be frozen."[52]  But this is not true even for Enbrel: If it is not stored in a refrigerated temperature range, the first 14-days' supply can still be used.[53]  Absent particular allegations regarding the nature and circumstances of the drugs about which the Plaintiffs purport to sue, Plaintiffs cannot state a plausible claim for relief.[54]

## CONCLUSION

The Second Amended Complaint should be dismissed in its entirety.

---

[52] Opp'n at 16.

[53] Compl. ¶ 51.

[54] Admittedly outside the scope of this Rule 12(b)(6) motion, the facts make plain that Plaintiffs are wrong and that many of the drugs about which they purport to sue have FDA temperature-storage requirements that diverge widely.  *See supra* 12 n.26.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Dated:  September 11, 2017

Respectfully Submitted,

**FOLEY & LARDNER LLP**

By:   /s/ Tami Smason
Tami Smason

WILLIAMS & CONNOLLY LLP
F. Lane Heard III*
Enu Mainigi*
J. Andrew Keyes*
Holly Conley*
Benjamin Hazelwood*
* Admitted pro hac vice

*Attorneys for Defendant CaremarkPCS Health, L.L.C.*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notifications of such filing to the following:

Caleb Marker                              Caleb.Marker@zimmreed.com


By:     /s/ Tami Smason
        Tami Smason
        FOLEY & LARDNER LLP

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS