# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| B. AMBURGEY and ALICE WASHINGTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAREMARKPCS HEALTH, L.L.C., and DOES 1–10,<br><br>Defendants. | Case No.: SACV 17-00183-CJC(KESx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH FOURTEEN DAYS' LEAVE TO AMEND** |

## I. INTRODUCTION

Plaintiffs B. Amburgey ("Amburgey") and Alice Washington ("Washington") filed this putative class action on February 2, 2017, against Defendant CaremarkPCS Health, L.L.C. ("Caremark"). (Dkt. 1.) On June 23, 2017, Plaintiffs filed a Second Amended

-1-

Complaint alleging that Caremark, a drug distribution company, fails to maintain certain drugs at the proper temperatures. (*See generally* Dkt. 31 [Second Amended Complaint, hereinafter "SAC"].) Before the Court is Caremark's motion to dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (Dkt. 32 ["Mot."].) For the following reasons, the motion is GRANTED.[1]

## II. BACKGROUND

According to the SAC, Caremark is a "direct subsidiary and pharmacy benefit manager of CVS Health" that "fills, dispenses, and ships prescription drugs to consumers." (SAC ¶ 1.) Some of the drugs Caremark distributes are what Plaintiffs refer to as "Specialty Drugs." (*Id.* ¶ 15.) Plaintiffs define "Specialty Drugs" as "all specialty drugs requiring refrigeration that are dispensed by Caremark's specialty pharmacies," and then provide a non-exclusive list of 21 Specialty Drugs.[2] (*Id.* ¶ 15(a)–(u).) Based on the SAC's allegations, it is not clear which or how many drugs qualify as "Specialty Drugs."

The crux of Plaintiffs' allegations is that Caremark does not implement adequate policies and procedures to ensure that Specialty Drugs are maintained at proper temperatures in accordance with U.S. Food and Drug Administration ("FDA") guidelines. (SAC ¶ 16.) Plaintiffs allege that Specialty Drugs must be kept at a temperature between 36 and 46 degrees Fahrenheit. (*Id.* ¶ 1.) Plaintiffs further allege that Caremark's conduct has "exposed an untold number of Americans to Specialty Drugs that are adulterated, have serious and fatal side effects, and the efficacy of which is

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for September 25, 2017, at 1:30 p.m. is hereby vacated and off calendar.

[2] Plaintiffs also state that "[a] list of the specialty drugs dispensed by Caremark's specialty pharmacies is attached as Exhibit 1," (SAC ¶ 15), but Plaintiffs failed to attach an Exhibit 1 to the SAC.

in question because it is illegal and immoral to test adulterated drugs on human beings." (*Id.* ¶ 90.)

The two named Plaintiffs, Amburgey and Washington, both allegedly obtained Specialty Drugs from Caremark. Both Plaintiffs allege that their doctors prescribed Enbrel—a medication used to treat arthritis—and that their health-insurance plans required them to obtain Enbrel from Caremark's specialty pharmacies. (SAC ¶¶ 27–31.) Plaintiff Amburgey further alleges that she obtained another Specialty Drug, Orencia, from Caremark. (*Id.* ¶ 54.)

Amburgey alleges that "some shipments of Enbrel shipped to [her] arrived frozen and/or too warm. The Enbrel dispensed and shipped by Caremark was injected into Plaintiff Amburgey's body." (SAC ¶ 68.) Amburgey also claims that "some shipments of Orencia shipped to [her doctor] arrived frozen and/or too warm. The Orencia dispensed and shipped by Caremark was injected into Plaintiff Amburgey's body." (*Id.* ¶ 69.) Washington makes essentially the same allegation: "some shipments of Enbrel shipped to [her] arrived frozen and/or too warm. The Enbrel dispensed and shipped by Caremark was injected into Plaintiff Washington's body." (*Id.* ¶ 70.) Neither Amburgey nor Washington alleges any adverse side effect from these injections.

Plaintiffs claim that Caremark should have taken a number of different measures when it shipped the Specialty Drugs to Plaintiffs, including disclosing that the drugs "may have frozen" and "may have been stored and/or shipped outside of the specified temperature range." (SAC ¶¶ 124–125.) Plaintiffs claim Caremark should have also disclosed that it "does not have adequate policies and procedure to store and distribute Specialty Drugs." (*Id.* ¶ 126.) Plaintiffs claim that had these purported facts been disclosed, Plaintiffs "would not have purchased the Specialty Drugs or would have paid less money for the Specialty Drugs." (*Id.*)

Plaintiff Amburgey claims that Caremark's misrepresentations about the shipping of Specialty Drugs violated the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750–1784, violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and constituted a breach of implied warranties. (SAC ¶¶ 148–215.) Amburgey, who is a resident of California, brings these claims individually and also seeks to represent a class defined as "[a]ny resident of California who obtained a Specialty Drug from any Caremark specialty pharmacy during the Class Period." (*Id.* ¶ 136.) The term "Class Period" is defined as the past four years (or the length of the longest applicable statute of limitations for any claim asserted). (*Id.* ¶ 138.)

Plaintiff Washington claims that Caremark's misrepresentations violated the Wisconsin Deceptive Trade Practices Act ("DTPA"), Wis. Stat. § 100.18, and constituted a breach of the implied warranty of merchantability under Wisconsin Statute § 402.314. (SAC ¶¶ 216–244.) Washington, who is a resident of Wisconsin, brings these claims individually and also seeks to represent a class defined as "[a]ny resident of Wisconsin who obtained a Specialty Drug from any Caremark specialty pharmacy during the Class Period." (*Id.* ¶ 137.)

## III. DISCUSSION

Caremark seeks dismissal of the SAC because "[e]ach Plaintiff has fundamental standing problems that prevent them from proceeding with their alleged claims." (Mot. at 6.) Because Plaintiffs are invoking federal jurisdiction, they bear the burden of establishing standing under Article III of the Constitution. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). "[T]he irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citations and

quotations omitted). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id*. (citation and quotations omitted). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)

Here, the SAC fails to plead any injury in fact, "the '[f]irst and foremost' of standing's three elements." *Spokeo, Inc.*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Conspicuously absent from the SAC is any allegation that Plaintiffs were injured when they were injected with Specialty Drugs that were "frozen and/or too warm." The SAC, which spans forty-five pages, discusses an array of topics including the following: "former USC professor Laurence Peter's eponymously named 'Peter Principle,'" (*id.* ¶ 5), "Hershey's chocolate bars," (*id.* ¶ 10), and the difference between "[v]erification and validation," (*id.* ¶ 91). But nowhere in these pages are factual allegations indicating that the "frozen and/or too warm" Specialty Drugs caused physical harm to Plaintiffs, caused unwanted side effects, or did not work as intended.

Plaintiffs do claim that they "noticed a lack of efficacy in treating the symptoms of their arthritis when using Specialty Drugs shipped by Caremark's specialty pharmacies," (*id.* ¶ 135), but this statement merely suggests that Plaintiffs wanted the drugs to better alleviate their symptoms. This statement does not indicate that the Specialty Drugs worked less effectively than intended. Plaintiffs therefore fail to plead any injury-in-fact. *See Myers-Armstrong v. Actavis Totowa, LLC*, 2009 WL 1082026, at *4 (N.D. Cal. Apr. 22, 2009), *aff'd*, 382 F. App'x 545 (9th Cir. 2010) (no standing to pursue claims based on

plaintiff's purchase of a drug where plaintiff did not plead facts indicating the drug did not work as intended, or any facts indicating adverse side effects, physical harm, or personal injury).

Plaintiffs suggest they have suffered economic harm because they would have paid less for the Specialty Drugs or declined to purchase them altogether if they knew about the risk that the drugs "may have frozen" or "may have been stored and/or shipped outside of the specified temperature range." (SAC ¶¶ 124–126.) This alleged loss does not constitute an injury-in-fact because it is not actual or imminent. Instead, this alleged loss is premised on the conjecture that the drugs "may" have been maintained at improper temperatures. Such an "alleged loss in value does not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (a hypothetical risk of hearing loss from using iPod headphones does not constitute an injury in fact).

Because Plaintiffs have failed to plead any injury in fact, the SAC must be dismissed for lack of standing. But, leave to amend must be freely granted, Fed. R. Civ. P. 15(a), and that policy is "to be applied with extreme liberality," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). While the SAC lacks sufficient allegations to establish Plaintiffs' standing, there is nothing to suggest that amendment is futile or that other factors counsel against giving them leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016) ("Dismissal of a complaint without leave to amend is only proper when, upon de novo review, it is clear that the complaint could not be saved by any amendment.").

//

//

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiffs' SAC is DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND.[3]

DATED:     September 21, 2017

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[3] Defendant has also raised several arguments requesting dismissal under Federal Rule of Civil Procedure 12(b)(6).  The Court lacks jurisdiction to consider Defendant's 12(b)(6) motion at this time, but Plaintiffs would be well-advised to consider those arguments should they choose to amend their complaint.