# Exhibit 6

## (Redacted Version of Document Proposed To Be Filed Under Seal)

**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Telephone: 213.972.4647
Facsimile: 213.486.0065
Tami Smason (SBN: 120213)
tsmason@foley.com

**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202.434.5000
Facsimile: 202.434.5029
F. Lane Heard III (admitted pro hac vice)
lheard@wc.com
Enu Mainigi (admitted pro hac vice)
emainigi@wc.com
J. Andrew Keyes (admitted pro hac vice)
akeyes@wc.com
Holly Conley (admitted pro hac vice)
hconley@wc.com
Benjamin Hazelwood (admitted pro hac vice)
bhazelwood@wc.com

*Attorneys for Defendant CaremarkPCS Health, L.L.C.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B. AMBURGEY and ALICE WASHINGTON, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>CAREMARKPCS HEALTH, L.L.C., and DOES 1–10,<br><br>        Defendants. | **Case No.: 8:17-CV-183 CJC KES**<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:       November 27, 2017<br>Time:      1:30 PM<br>Courtroom:  9B<br><br>Assigned to Hon. Cormac J. Carney<br>*[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]* |

1

TO:  PLAINTIFFS AND THEIR COUNSEL OF RECORD:

2

PLEASE TAKE NOTICE that on November 27, 2017, at 1:30 p.m., or as

3

soon thereafter as counsel may be heard, in Courtroom 9B of the Honorable Cormac

4

J. Carney, Ronald Reagan Federal Building and United States Courthouse, 411 W.

5

Fourth St., Santa Ana, CA, 92701, the defendant, CaremarkPCS Health, L.L.C., will

6

and hereby does move the Court pursuant to Federal Rules of Civil Procedure

7

12(b)(1), 12(b)(2), and 12(b)(6) for an order dismissing the Third Amended

8

Complaint of B. Amburgey and Alice Washington for lack of subject-matter

9

jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which

10

relief can be granted.

11

This Motion is and will be based on this Notice of Motion, the accompanying

12

Memorandum of Points and Authorities, the Statement of Uncontroverted Facts and

13

Conclusions of Law, the Declarations of Richard Peterman, the Declarations of

14

Thomas S. Moffatt, court records and files, and upon such other evidence and

15

argument that may be offered at the hearing on the Motion.

16

This Motion is made following the conference of counsel pursuant to Local

17

Rule 7-3, which took place on October 12, 2017.

18

19

20

21

22

23

24

25

26

27

28

1  Dated:  October 23, 2017

2

3                                 Respectfully Submitted,

4                                 **FOLEY & LARDNER LLP**

5

6                      By:      */s/ Tami Smason*

7                                 Tami Smason

8                                 WILLIAMS & CONNOLLY LLP
                                  F. Lane Heard III*
9                                 Enu Mainigi*
10                                J. Andrew Keyes*
                                  Holly Conley*
11                                Benjamin Hazelwood*
12                                *Admitted pro hac vice

13
     *Attorneys for Defendant CaremarkPCS Health, L.L.C.*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

1
2

# <u>TABLE OF CONTENTS</u>

3   INTRODUCTION ......................................................................................1

4   ALLEGATIONS ........................................................................................3

5   I.      PLAINTIFFS LACK STANDING. ..................................................6

6
        A.     Plaintiffs Lack Standing To Sue Caremark...........................7
7
        B.     Amburgey Lacks Standing To Sue about Enbrel...................9
8
9       C.     Amburgey and Washington Allege No Concrete Injury-in-Fact........11

10               1.     Plaintiffs did not perceive any defect in their drugs. ...............11

11               2.     Plaintiffs' claim of injury is speculative. ...................12

12
                 3.     Plaintiffs' new claim of personal injury is insufficient. ...........13
13

14   II.     THE COURT LACKS PERSONAL JURISDICTION...............................16

15      A.     The Court Lacks General Jurisdiction. ...............................16

16      B.     The Court Lacks Specific Jurisdiction. ...............................17

17   III.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF
        CAN BE GRANTED. ...................................................................19
18
19      A.     Plaintiffs Fail To Allege False Representations....................20

20      B.     Amburgey Fails To Allege Reliance......................................21

21      C.     Washington Fails To Allege Causation. ...............................23

22
        D.     Washington Fails To Allege Affirmative Representations.................24
23
        E.     Washington Fails To Allege a Misrepresentation to "The Public." ...24
24

25   CONCLUSION..........................................................................................25

26
27
28

DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*,
   333 F. App'x 994 (6th Cir. 2009) ........................................................... 16

*Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) ......................... 16

*Autery v. United States*, 424 F.3d 944 (9th Cir. 2005) ............................ 9, 10

*Bates v. Wis. Dep't of Workforce Dev.*, 375 F. App'x 633 (7th Cir. 2010) ............... 26

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ......................... 13, 17

*Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773 (2017) ........................... 19, 20

*Cousin Subs Sys. Inc. v. Better Subs Dev. Inc.*, 2011 WL 4585541
   (E.D. Wis. Sept. 30, 2011) ................................................................... 26

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ..................................... 17, 18

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) (per curiam) ............................ 19

*Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004) .................................... 9

*Edmundson v. Procter & Gamble Co.*, 537 F. App'x 708 (9th Cir. 2013) ................ 21

*Friedman v. Mercedes Benz USA LLC*, 2013 WL 8336127
   (C.D. Cal. June 12, 2013) ..................................................................... 24

*Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561
   (9th Cir. 2008) ..................................................................................... 22

*Herrera v. County of Los Angeles*, 482 F. App'x 263 (9th Cir. 2012) ................ 13, 16

*Islamic Shura Council of S. Cal. v. FBI*, 278 F.R.D. 538
   (C.D. Cal. 2011) .................................................................................... 2

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ........................... 21

*Lanovaz v. Twinings N. Am., Inc.*, 2014 WL 46822
   (N.D. Cal. Jan. 6, 2014) ....................................................................... 22

*Lee v. Am. Nat'l Ins.*, 260 F.3d 997 (9th Cir. 2001) ..................................... 9

*Leitner v. Sadhana Temple of N.Y, Inc.*, 2014 WL 12588643
    (C.D. Cal. Oct. 17, 2014) ........................................................................ 13

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ................................. 23

*Miller v. Vonage Am., Inc.*, 2015 WL 59361 (E.D. Wis. Jan. 5, 2015) ..................... 21

*Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119 (E.D. Wis. 2016) ............................ 25

*Myers-Armstrong v. Actavis Totowa, LLC*, 2009 WL 1082026
    (N.D. Cal. Apr. 22, 2009) ...................................................................... 14

*Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014) ................................ 23

*PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007) ......................... 16

*Robertson v. Qadri*, 2008 WL 818529 (N.D. Cal. Mar. 25, 2008) ............................ 11

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) ........................................... 9

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ................................. 9

*Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777 (9th Cir. 2012) ..................... 22

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ............... 17

*Scott v. Cal. African Am. Museum*, 2015 WL 12803454
    (C.D. Cal. Feb. 23, 2015) ...................................................................... 15

*Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659
    (W.D. Wis. 2009) .................................................................................... 24

*Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075 (N.D. Cal. 2017) ................. 22

*Tracht Gut, LLC v. L.A. Cty. Treasurer & Tax Collector
(In re Tracht Gut, LLC)*, 836 F.3d 1146 (9th Cir. 2016) ......................................... 20

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006) ..................... 19

*United States ex rel. Lee v. Corinthian Colls., Inc.*, 655 F.3d 984
    (9th Cir. 2011) ........................................................................................ 16

*United States v. Carroll*, 667 F.3d 742 (6th Cir. 2012) ........................................ 9, 11

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) ................................ 18

DEFENDANT'S MOTION TO DISMISS

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247
    (2d Cir. 2000)............................................................................................11

### STATE CASES

*K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*,
    732 N.W.2d 792 (Wis. 2007) ...........................................................24, 25

*Princess Cruise Lines, Ltd. v. Super. Ct.*, 179 Cal. App. 4th 36
    (2d Dist. 2009)..........................................................................................23

*Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233 (Wis. 2004)..........................25

### OTHER AUTHORITIES

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ..........................................7

4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and
    Procedure* § 1068 (4th ed. 2015) ..............................................................19

Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750–1784.................................6

Fed. R. Civ. P. 4(k)(1)(A) ..........................................................................................19

Fed. R. Civ. P. 9(b) ...............................................................................................20, 21

Fed. R. Civ. P. 11(b) ...................................................................................................16

Fed. R. Civ. P. 12(b)(6) .....................................................................................5, 13, 16

Fed. R. Civ. P. 23 ...............................................................................................7, 14, 23

Deceptive Trade Practices Act, Wis. Stat. § 100.18.....................................................7

DEFENDANT'S MOTION TO DISMISS

1

# INTRODUCTION

Notwithstanding the Court's admonition that "Plaintiffs would be well-advised to consider [Caremark's Rule 12(b)(6)] arguments should they choose to amend their complaint,"[1] Plaintiffs again:

(1) sue the wrong defendant (despite undisputed evidence from the prior Motion that CaremarkPCS Health, L.L.C. ("Caremark") does not own or operate either of the specialty pharmacies mentioned in the complaint);

(2) assert that this Court has personal jurisdiction over Caremark (despite uncontroverted evidence from the prior Motion that Caremark is not incorporated in California, does not have a principal place of business in California, does not have significant contacts with California, and did not ship any drugs to either plaintiff); and

(3) claim that Amburgey received Enbrel from Caremark (which conclusory allegation is contrary to all of the Caremark records that were submitted to the Court with the prior Motion).

Beyond lacking a good-faith basis for the cornerstones of their Complaint,[2] Plaintiffs did not revise their factual allegations to remedy many pleading deficiencies highlighted in Caremark's prior Motion. Because Plaintiffs have failed to modify their allegations to cure fatal shortcomings previously raised with the Court, many arguments in this Motion are the same as arguments made in Caremark's prior Motion.[3]

---

[1]   D.E. 47 (Sept. 21, 2017 Order) at 7 n.3.

[2]   Plaintiffs' persistence in bringing allegations that have been disproven, without an explanation for continuing to do so, calls into question whether Plaintiffs' counsel have complied with their obligation to ensure that other allegations in the Complaint are "factually and legally tenable from an objective perspective" and that they were made only "after 'an inquiry reasonable under the circumstances.'" *Islamic Shura Council of S. Cal. v. FBI*, 278 F.R.D. 538, 543 (C.D. Cal. 2011), *rev'd on other grounds*, 757 F.3d 870 (9th Cir. 2014) (quoting Fed. R. Civ. P. 11(b)).

[3]   One exception is that Plaintiffs have abandoned their attempt to sue about an undefined set of hundreds of "Specialty Drugs" that neither plaintiff ever received

---

As to standing, Plaintiffs now allege for the first time, in the fourth version of their complaint, that the Enbrel and Orencia they received were less effective as a result of Caremark's shipping method, and Amburgey now claims that an infection she previously acknowledged was a disclosed side effect of ***functioning*** Enbrel was in fact "caused and/or exacerbated" by the allegedly defective Enbrel and Orencia she took.[4]  What previously was a claim about losing the benefit of their bargain is now a claim premised on personal-injury harm.

Only after the Court's ruling did Plaintiffs suddenly claim that they knew all along that they had experienced "arthritic flare ups" "[a]fter injecting" drugs from Caremark.  And, in a particularly bold change of position, Amburgey now claims, "[u]pon information and belief," that her infection was actually "caused and/or exacerbated" by the Enbrel and Orencia she took, although she still makes the

---

or used.  D.E. 49 (Third Amended Complaint ("Complaint" or "TAC")) ¶ 4 ("The two Specialty Drugs at issue in this matter, Orencia and Enbrel …."); *id.* ¶ 16 ("Enbrel and Orencia, the drugs at issue here ….").  The Third Amended Complaint also does not attach or otherwise reference any list of "Specialty Drugs," unlike Plaintiffs' prior complaints.  Even if Plaintiffs were still pursuing claims for drugs they never received from Caremark, Plaintiffs would lack standing to sue about such other drugs and the lack of allegations regarding the storage and shipping requirements for such drugs would preclude any plausible claim.  *See* D.E. 32 (Mot. To Dismiss SAC) at 11–13, 23–24.

[4]  Plaintiffs' new claim that Enbrel is ineffective or less effective if it reaches temperatures outside the range of 36 to 46 degrees Fahrenheit is particularly troubling.  Plaintiffs allege that "[t]here are no valid studies supporting the viability of Enbrel shipped outside of the FDA required temperature range of 36 to 46 degrees Fahrenheit," Complaint ¶ 59, but this is patently incorrect.  In representing a state-court putative class action regarding these same issues, Plaintiffs' counsel has obtained ample documentary evidence and testimony regarding "stability testing" conducted by Enbrel's manufacturer, including stability studies that prove Enbrel remains safe, effective and potent for sustained periods at temperatures well outside the 36 to 46 degrees Fahrenheit range.  Particularly given Plaintiffs' insistence on other allegations that are squarely contradicted by the evidence, *see supra* at 1, Caremark respectfully requests the Court require Plaintiffs to identify their basis for claiming otherwise to this Court.

2

1   contradictory allegation that such infections are well-known side effects of

2   functioning Enbrel.  Even if these implausible and previously unmentioned claims of

3   injury are accepted at face value, they are insufficient to state a claim.  Plaintiffs still

4   do not allege anything but speculation that they personally received drugs that were

5   impacted by the defects they allege or that any personal-injury harm they experienced

6   was caused by those drugs.

7          For each and all of these reasons, the Third Amended Complaint should be

8   dismissed.

9                                         **ALLEGATIONS**

10          This putative class action is brought by two Plaintiffs—B. Amburgey and Alice

11  Washington, residents of California and Wisconsin, respectively.[5]  Both allege that

12  their doctors prescribed Enbrel—a medication used to treat arthritis[6]—and that their

13  health-insurance plans required them to obtain Enbrel from Caremark's specialty

14  pharmacies,[7] which ship drugs via United Parcel Service (UPS).[8]  Amburgey

15  allegedly received Enbrel "from Caremark's specialty pharmacy in Redlands,

16  California throughout 2015";[9] Washington allegedly received Enbrel "from

17  Caremark's specialty pharmacy in Monroeville, Pennsylvania from approximately

18  2014 to the present."[10]  As explained below, Amburgey did not, in fact, receive any

19  Enbrel from any CVS specialty pharmacy.  After counsel for Caremark advised

20  Plaintiffs' counsel of this fact,[11] Plaintiffs amended their Complaint to add the

21  allegation that Amburgey's doctor also prescribed Orencia—another arthritis

22

23  [5]   Complaint ¶¶ 31–32.
24  [6]   *Id.* ¶ 45.
    [7]   *Id.* ¶¶ 31–32, 41, 44.
25  [8]   *Id.* ¶ 121.
26  [9]   *Id.* ¶ 41.
    [10]  *Id.* ¶ 44.
27  [11]  The parties met and conferred regarding Caremark's proposed motion to dismiss
28        the First Amended Complaint.

DEFENDANT'S MOTION TO DISMISS

medication[12]—and that her health-insurance plan required her to obtain Orencia from Caremark's specialty pharmacies,[13] but they did not withdraw the allegation that Caremark supplied her Enbrel.

According to the Complaint, the manufacturer of Enbrel (Immunex) "only manufactures, sells and distributes Enbrel in 28-day supplies."[14]  As a general rule, "Enbrel must be stored and maintained between a temperature of 36 and 46 degrees Fahrenheit," but "FDA [has] approved instructions that allow for Enbrel to be stored at room temperature (68 to 77 degrees Fahrenheit) for up to 14 days."[15]  The Complaint contains no such allegations regarding Orencia.  Indeed, the only specific allegation about Orencia is that it "must be administered using an IV injection" and therefore "is shipped directly to a patient's healthcare provider for injection."[16]

As the Court previously wrote, "[t]he crux of Plaintiffs' allegations is that Caremark does not implement adequate policies and procedures to ensure that Specialty Drugs are maintained at proper temperatures in accordance with U.S. Food and Drug Administration … guidelines."[17]  Plaintiffs contend that this is actionable because the packaging for these drugs contained misrepresentations in the form of (1) a statement that the melting of the ice pack can be expected, (2) a logo of a penguin crossed through (supposedly signifying that the contents "ha[ve] not been frozen and should not be frozen"), (3) a notice inside the package that the shipping procedure

---

[12]  *Id.* ¶ 70.

[13]  *Id.* ¶¶ 31, 41.  Amburgey alleges that she received Orencia from Caremark in 2016.  *Id.* ¶ 69.

[14]  *Id.* ¶ 65.

[15]  *Id.* ¶¶ 55, 57.

[16]  *Id.* ¶ 74.  Plaintiffs allege, "[u]pon knowledge and belief," that "Orencia and Enbrel share substantially the same or identical storage requirements and packaging warnings," *id.* ¶ 72, but it is unclear whether they claim that Orencia, too, may safely be stored "at room temperature … for up to 14 days," *id.* ¶ 57.

[17]  D.E. 47 (Sept. 21, 2017 Order) at 2.

4

DEFENDANT'S MOTION TO DISMISS

was "new and improved," "does even more" to keep drugs cold, and exceeds "industry standards," and (4) a "REFRIGERATED" label.[18]

The allegations regarding the condition of the drugs received by Amburgey and Washington change markedly with each complaint they file.  Plaintiffs have gone from claiming only that Amburgey received "[s]everal shipments of Enbrel that … arrived frozen" and saying nothing about Washington's shipments,[19] to asserting that both Plaintiffs received "some shipments" that "arrived frozen and/or too warm."[20] Now, Plaintiffs say that "some *or all*" shipments to each Plaintiff "arrived frozen and/or too warm, *or experienced temperature excursions during transit*,"[21] while standing by separate allegations that Amburgey just "received shipments of Specialty Drugs that were frozen upon arrival," while Washington received "room temperature" shipments, "[u]nbeknownst to her at the time."[22]

Similarly, Plaintiffs prior complaints said nothing about any personal injuries caused by the drugs nor suggested that the alleged defect in Caremark's shipping caused any ineffectiveness.  Indeed, they admitted "that the Enbrel was not effectively treating [Amburgey's] arthritis," that she tried other drugs that also did not work for her, and that Amburgey "later learned that she had an infection that was affecting her artificial knee replacement," which "she had likely had … for some time—including the time she was on Enbrel [in 2015]."[23]  The complaints also admitted that this infection was "a well-known side effect of Enbrel."[24]  Now, Plaintiffs suddenly claim to have suffered previously unmentioned "arthritic flare ups" that occurred "after [being] injected with [the Specialty Drugs]," supposed

---

[18] Complaint ¶¶ 117–118, 120.
[19] D.E. 8 (First Amended Complaint ("FAC")) ¶ 32.
[20] D.E. 31 (Second Amended Complaint ("SAC")) ¶¶ 68–70.
[21] Complaint ¶¶ 85–86 (emphases added).
[22] *Id.* ¶¶ 147–48.
[23] D.E. 8 (FAC) ¶¶ 37–41; D.E. 31 (SAC) ¶¶ 52–54, 59–60.
[24] D.E. 8 (FAC) ¶ 42; D.E. 31 (SAC) ¶ 61.

DEFENDANT'S MOTION TO DISMISS

evidence of ineffectiveness caused by the alleged defect in Caremark's shipping, and Amburgey claims that her infection, which she continues to allege was "a well-known side effect of Enbrel" that arose while she was taking Enbrel and before she started taking Orencia, was "caused and/or exacerbated" by the Enbrel and Orencia.[25]

Amburgey claims that Caremark's alleged representations about the shipping of Enbrel and other Specialty Drugs violated the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750–1784, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and also breached implied warranties.[26]  She seeks to represent a class defined as "[a]ny resident of California who obtained a Specialty Drug from any Caremark specialty pharmacy during the Class Period."[27]

Washington claims that the same alleged misrepresentations violated the Wisconsin Deceptive Trade Practices Act ("DTPA"), Wis. Stat. § 100.18, and also breached implied warranties.[28]  She seeks to represent a class defined as "[a]ny resident of Wisconsin who obtained a Specialty Drug from any Caremark specialty pharmacy during the Class Period."[29]

## ARGUMENT

## I.    PLAINTIFFS LACK STANDING.

The Court dismissed the Second Amended Complaint because each Plaintiff has fundamental standing problems that prevent her from proceeding with her claims. The Third Amended Complaint does not cure these defects.  "'[T]he irreducible

---

[25] Complaint ¶¶ 25, 28, 76–78.
[26] Complaint ¶¶ 164–232.
[27] *Id.* ¶ 152.  Amburgey also brings individual claims for product liability, failure to warn, and negligence.  *Id.* ¶¶ 262–296.  The impact of these claims and similar ones raised by Washington on the Plaintiffs' adequacy to serve as representatives of putative classes that do not seek relief under such theories is beyond the scope of this motion.  *See* Fed. R. Civ. P. 23(a)(4).
[28] Complaint ¶¶ 233–261.
[29] *Id.* ¶ 153.  Washington also brings individual claims for product liability, failure to warn, and negligence.  *Id.* ¶¶ 297–331.

DEFENDANT'S MOTION TO DISMISS

constitutional minimum of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  D.E. 47 (Sept. 21, 2017 Order) at 4 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

### A.   Plaintiffs Lack Standing To Sue Caremark.

Caremark has repeatedly informed Plaintiffs that it is not the appropriate defendant in this case because all of the shipments they received from any CVS specialty mail pharmacy came from the specialty pharmacy in Monroeville, Pennsylvania,[30] which is operated by ProCare Pharmacy Direct, L.L.C. ("ProCare").[31] Despite this, Plaintiffs again sue Caremark with no explanation of their basis for doing so.  Nor does Plaintiffs' argument—raised in opposition to Caremark's prior Motion—that the Redlands, California specialty pharmacy is operated by Caremark,[32] help them.  The argument is irrelevant because no plaintiff received any shipment from the Redlands, California pharmacy.  It is also incorrect because Plaintiffs' theory is premised on a State Board of Pharmacy license for the Redlands specialty pharmacy correctly listing "Caremark, L.L.C." as the owner and operator of the

---

[30]  Washington concedes that all of her shipments came from the Monroeville, Pennsylvania specialty pharmacy, *id.* ¶ 44, and Caremark has confirmed this fact, *see* First Declaration of Richard Peterman ("Peterman Decl.") ¶ 8 (attached as Exhibit 1).  Amburgey's allegation that she received Enbrel from the specialty pharmacy in Redlands, California, Complaint ¶ 41, need not be accepted because it is contrary to the declarations submitted by Caremark confirming that she never received Enbrel from any CVS specialty pharmacy.  *See* Part I.B., *infra*.  Although Amburgey makes no allegation regarding the origin of her Orencia shipments, Caremark has submitted a declaration confirming that all of these shipments came from the Monroeville, Pennsylvania specialty pharmacy.  First Peterman Decl. ¶ 7.

[31]  First Declaration of Thomas S. Moffatt ("First Moffatt Decl.") ¶ 5 (attached as Exhibit 3).

[32]  D.E. 41 (Opp'n to Mot. to Dismiss SAC) at 9–10.

---

DEFENDANT'S MOTION TO DISMISS

Redlands specialty pharmacy.[33]  As set forth in the Second Declaration of Thomas S. Moffatt, Caremark, L.L.C. is not the same entity as CaremarkPCS Health, L.L.C., the named defendant here.  They are distinct legal entities, and neither is owned—directly or indirectly—by the other.[34]

The Court may consider this evidence in evaluating this "factual" challenge to its jurisdiction because "[t]he court need not presume the truthfulness of the plaintiff's allegations."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In the alternative, the Court "'should employ the standard applicable to a motion for summary judgment'" and reach the same result, because there is no evidence that Caremark was involved in any shipment to either plaintiff.  *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) (quoting *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987)).[35]  Either way, Plaintiffs have the burden of proving that they have standing.  *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) ("[T]he party asserting subject matter jurisdiction has the burden of proving its existence." (internal quotation marks omitted)).

Plaintiffs have, in short, "sued the wrong parties, depriving [them] of standing to bring this lawsuit."  *United States v. Carroll*, 667 F.3d 742, 745 (6th Cir. 2012).  A plaintiff lacks standing to sue a defendant that did not harm her.  *Easter v. Am. W. Fin.*, 381 F.3d 948, 961–62 (9th Cir. 2004) (named plaintiffs bringing class claims regarding lending violations lacked standing to sue "those trusts which have never held a named plaintiff's loan"); *Lee v. Am. Nat'l Ins.*, 260 F.3d 997, 1001–02 (9th

---

[33]  Second Declaration of Thomas S. Moffatt ("Second Moffatt Decl.") ¶ 5 (attached as Exhibit 4); *see* D.E. 41 (Opp'n to Mot. to Dismiss SAC) at 10; D.E. 43-1 (Ex. A to Pls.' Request for Judicial Notice).

[34]  Second Moffatt Decl. ¶ 5.

[35]  Caremark has attached a Statement of Uncontroverted Facts and Conclusions of Law to enable the Court to treat this argument, in the alternative, as a motion for summary judgment.

Cir. 2001) (plaintiff lacked standing where "he did not buy any policy from ANTEX and so did not suffer any injury due to ANTEX's conduct").

### B.     Amburgey Lacks Standing To Sue about Enbrel.

Contrary to the allegations of the Complaint, Amburgey did not "obtain[] Enbrel from Caremark's specialty pharmacy in Redlands, California throughout 2015."[36]  As Caremark has informed Plaintiffs repeatedly, CVS's records, which track all pharmaceutical shipments to patients, reflect that CVS has *never* shipped Enbrel to Amburgey from *any* of its specialty pharmacies.[37]  This factual challenge to jurisdiction is subject to the same standards of review as Caremark's argument in Part I.A., *supra*.  In the alternative, the Court "'should employ the standard applicable to a motion for summary judgment'" and reach the same result, because there can be no genuine dispute that Amburgey never received Enbrel from Caremark.  *Autery*, 424 F.3d at 956 (quoting *Rosales*, 824 F.2d at 803).[38]

Although repeatedly advised by Caremark's counsel that no records support the allegation, Amburgey persists in claiming that Caremark must have shipped Enbrel to her.  The sole support Amburgey has proffered (in opposition to Caremark's first motion to dismiss) is her own declaration, in which she claims to remember receiving Enbrel from "CVS/Caremark" in 2015, but she supplies no corroboration for her recollection.[39]  Amburgey has no evidence to support her memory of receiving Enbrel from any pharmacy in 2015.  She does not have her Enbrel prescription, nor does her doctor, apparently because her doctor's records do not "go back further than 2015."[40]  Amburgey has never explained why those records do not include anything to

---

[36] Complaint ¶ 41.
[37] First Peterman Decl. ¶¶ 3–7.
[38] Caremark has attached a Statement of Uncontroverted Facts and Conclusions of Law to permit the Court to treat this argument, in the alternative, as a motion for partial summary judgment.
[39] D.E. 42 (Declaration of Bunni Amburgey ("Amburgey Decl.")) ¶¶ 3–6, 8.
[40] *Id.* ¶ 13.

9

DEFENDANT'S MOTION TO DISMISS

1    substantiate her claimed receipt of Enbrel *in* 2015.  The only documentation that

2    Amburgey submitted was a printout of "payments [from Amburgey's Flexible

3    Spending Account] in the amount of $150.00 to CVS/Caremark that were made on

4    April 15, 2015, and August 15, 2015."[41]  But, notably, she did ***not*** claim that those

5    payments were for Enbrel; she wrote only that "[t]he two $150.00 payments predate

6    my purchases of Orencia from CVS/Caremark."[42]  In fact, records demonstrate that

7    those payments ████████████████████████████████.[43]  Amburgey's vague

8    and unsupported memories of receiving Enbrel, contradicted by Caremark's records,

9    are insufficient to meet her burden of establishing that this Court has subject-matter

10   jurisdiction.  *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d

11   247, 253 (2d Cir. 2000) (finding that "conclusory allegations in [an] affidavit are not

12   sufficient to create a material issue of fact" such that an evidentiary hearing was

13   unnecessary and the Court could find on the papers that it lacked jurisdiction).[44]

14          Amburgey therefore lacks standing to pursue claims regarding Enbrel against

15   any CVS specialty mail pharmacy.  She has, in short, "sued the wrong parties,

16   depriving [her] of standing to bring this lawsuit."  *Carroll*, 667 F.3d at 745.

17   Although it is within this Court's "discretion whether to hold an evidentiary hearing"

18   to resolve this issue, *Robertson v. Qadri*, 2008 WL 818529, at *4 n.4 (N.D. Cal. Mar.

19

20   ───────────────

[41]  Amburgey Decl. ¶ 11; *see* D.E. 42-1 (Ex. A to Amburgey Decl.).

21   [42]  Amburgey Decl. ¶ 12.

22   [43]  ████████████████████████████████████████████  *See*

23   Second Declaration of Richard Peterman ("Second Peterman Decl.") ¶ 6 (attached

     as Exhibit 2).  ████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   [44]  Amburgey's declaration also noted that her "insurance account with Blue Cross
     Anthem may have been associated with [her] husband, Guy Dale Amburgey."

26   Amburgey Decl. ¶ 7.  To the extent she is implying that records of drug shipments
     to her may have been under her husband's name, this is a misunderstanding of the

27   way that such records work.  ████████████████████████████████

28   ████████████████████████  Second Peterman Decl. ¶ 5.

DEFENDANT'S MOTION TO DISMISS

25, 2008), *aff'd* 399 F. App'x 219 (9th Cir. 2010), Caremark submits that an evidentiary hearing is unnecessary because Amburgey has proffered only vague and conclusory assertions that are contradicted by the record.

### C. Amburgey and Washington Allege No Concrete Injury-in-Fact.

Caremark previously argued that Amburgey and Washington lack standing for two independent reasons. Neither plaintiff sufficiently alleged that the drugs she personally received were impacted by the alleged shipping defect, and neither plaintiff explained what harm she suffered had any drug been impacted. The Court agreed, and dismissed the Second Amended Complaint for lack of standing because (1) their "alleged loss is premised on the conjecture that the drugs 'may' have been maintained at improper temperatures"; and (2) "[c]onspicuously absent from the SAC is any allegation that Plaintiffs were injured when they were injected with Specialty Drugs that were 'frozen and/or too warm.'"[45] In response, Plaintiffs have conveniently revised their allegations in the fourth version of their complaint, yet their new allegations remain deficient for the same reasons.

### 1. Plaintiffs did not perceive any defect in their drugs.

Plaintiffs' standing allegations are premised on allegedly defective drugs, but neither Plaintiff has any basis for making an allegation regarding the condition of the drugs she received from Caremark. Amburgey's allegations regarding the condition of her Enbrel are irrelevant because she did not receive Enbrel from Caremark.[46] As for Orencia, Amburgey did not perceive any defect in the Orencia administered to her because the shipments went to her doctor.[47] Finally, although Washington's Enbrel was shipped to her directly, she admits that the Enbrel's condition on receipt was "[u]nbeknownst to her at the time."[48]

---

[45] D.E. 47 (Sept. 21, 2017 Order) at 5–6.
[46] Part I.B, *supra*.
[47] Complaint ¶¶ 74, 86.
[48] *Id.* ¶ 148.

DEFENDANT'S MOTION TO DISMISS

## 2.   Plaintiffs' claim of injury is speculative.

Because neither Plaintiff claims to have personal knowledge about the condition of the drugs they received from Caremark, both continue to rely exclusively on "conjecture that the drugs 'may' have been maintained at improper temperatures."[49]   Their allegation that "some *or* all" shipments to each Plaintiff "arrived frozen ***and/or*** too warm, *or* experienced temperature excursions during transit,"[50] is not only so self-contradictory as to be meaningless,[51] but it is also speculation based entirely on their belief that Caremark's approach to packaging shipments of certain durations was wrong.  Such a "hypothetical risk" cannot support standing.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 956, 958, 960–61 (9th Cir. 2009).

Plaintiffs make new, contradictory allegations entirely "[o]n information and belief" regarding the supposed likelihood that shipments of a certain minimum duration exceeded the allegedly permissible temperature range,[52] but they do not connect those allegations to the drugs that were shipped to Amburgey or Washington. Plaintiffs allege that "all shipments of Specialty Drugs that took more than 20 hours

---

[49]   D.E. 47 (Sept. 21, 2017 Order) at 6.

[50]   Complaint ¶¶ 85–86 (emphasis added).

[51]   Their suggestion that the shipments may have "arrived" both frozen and too warm is a nonsensical contradiction that cannot support the existence of an injury-in-fact.  *Cf. Herrera v. County of Los Angeles*, 482 F. App'x 263, 265 (9th Cir. 2012) (finding that a claim was "not plausible" under Rule 12(b)(6) where its key "allegation is repeatedly contradicted by other allegations" in the complaint); *Leitner v. Sadhana Temple of N.Y, Inc.*, 2014 WL 12588643, at *17 (C.D. Cal. Oct. 17, 2014) (same where a plaintiff made "contradictory" allegations).

[52]   Plaintiffs' allegations again contradict themselves.  Plaintiffs allege "[u]pon information and belief" that "*any* Specialty Drug placed in Caremark's shipping container for more than 20 hours gets too warm."  Complaint ¶ 129 (emphasis added).  Plaintiffs also allege that any shipment "that took more than 20 hours to deliver "would either freeze from the use of too-cold gel packs, or rise to temperatures far warmer than the FDA-specified limit as a result of the packaging's insufficient insulation, or both."  *Id.* ¶ 84.

---

12

to deliver … experience[d] improper temperature excursions."[53]  Even if this were true (it is not), there is no allegation in the Complaint that Amburgey and Washington received shipments that "took more than 20 hours to deliver."  Instead, the Complaint alleges, again entirely "[u]pon information and belief," that "the *majority* of Specialty Drugs shipped by Caremark are in transit for more than 20 hours."[54]  Putting aside the byzantine individualized inquiry that Plaintiffs' own theory would require were this case ever certified as a class action, *see* Fed. R. Civ. P. 23(a)(2), (b)(3), these allegations do not support the conclusion that *Amburgey* or *Washington* received drugs that were impacted.  Accordingly, Plaintiffs' claim that they received defective drugs remains too speculative to support standing.

### 3. Plaintiffs' new claim of personal injury is insufficient.

Plaintiffs still fail to allege how they were harmed.  The Court dismissed the Second Amended Complaint in part because it found that "[c]onspicuously absent from the SAC is any allegation that Plaintiffs were injured when they were injected with Specialty Drugs that were 'frozen and/or too warm.'"[55]  In response, Plaintiffs appear to have disclaimed any benefit-of-the-bargain theory.  They also appear not to rely on the theory that harm flows from drugs having been adulterated in "law" absent any concrete violation that renders the drug harmful or less effective.[56]

---

[53]  *Id.* ¶ 84.
[54]  *Id.* ¶ 133 (emphasis added).
[55]  D.E. 47 (Sept. 21, 2017 Order) at 5.
[56]  To the extent that Plaintiffs have shifted to a suggestion that they were harmed because "possession of adulterated medication is a criminal offense," Complaint ¶ 22, this fails because (1) plaintiffs provide no support for the suggestion that receiving a drug that may (or may not) have exceeded an alleged temperature range is a criminal offense, and (2) Article III standing cannot be premised on a mere allegation that a drug was adulterated absent "an actual manifestation of a defect that results in some injury or rational fear of future injury."  *Myers-Armstrong v. Actavis Totowa, LLC*, 2009 WL 1082026, at *4 (N.D. Cal. Apr. 22, 2009) (emphases omitted), *aff'd*, 382 F. App'x 545 (9th Cir. 2010).

---

13

1   Instead, Plaintiffs repeat a talismanic invocation of the terms "efficacy" and "personal

2   injury" in an effort to create previously unmentioned injuries to fit within the

3   language of the Court's Order.

4        Plaintiffs' ***three*** prior complaints said nothing about any personal injury and

5   did not connect any claimed inefficacy to Caremark's shipping method.  Indeed, in

6   the earlier versions of their complaint, Plaintiffs claimed only "that the Enbrel was

7   not effectively treating [Amburgey's] arthritis"—as the Court described it, a "mere[]

8   suggest[ion] that Plaintiffs wanted the drugs to better alleviate their symptoms"[57]—

9   and that Amburgey tried other drugs that also did not work for her, while saying

10  nothing about Washington.[58]  Plaintiffs now assert that they both suffered previously

11  unmentioned "arthritic flare ups" that occurred "after [being] injected with [the

12  Specialty Drugs]."[59]  Even accepting these implausibly late-breaking assertions as

13  true, they are insufficient.  Plaintiffs' failure to allege that the drugs they personally

14  received were impacted by the alleged shipping defect reveals that they have no idea

15  what caused their previously unmentioned "flare ups."  Instead, Plaintiffs' allegations

16  still "merely suggest[] that Plaintiffs wanted the drugs to better alleviate their

17  symptoms."[60]  This is not an injury-in-fact sufficient to support standing.

18       Amburgey's eleventh-hour assertion that Caremark's Orencia gave her an

19  infection defies belief.  In all four versions of her complaints, Amburgey has alleged

20  that the infection was "a well-known side effect of Enbrel," and that Amburgey

21  "likely had" the infection "for some time—including the time she was on Enbrel [in

22  2015]."[61]  Amburgey's new, contradictory claim ("[u]pon information and belief")

23

24  ────────────

25  [57]  D.E. 47 (Sept. 21, 2017 Order) at 5.
    [58]  D.E. 8 (FAC) ¶¶ 37–41; D.E. 31 (SAC) ¶¶ 52–54, 59–60.
26  [59]  Complaint ¶¶ 25, 28.
    [60]  D.E. 47 (Sept. 21, 2017 Order) at 5.
27  [61]  D.E. 1 (Complaint) ¶¶ 36–37; D.E. 8 (FAC) ¶¶ 41–42; D.E. 31 (SAC) ¶¶ 60–61;
        Complaint ¶¶ 76–77.
28

DEFENDANT'S MOTION TO DISMISS

that this infection was "caused and/or exacerbated" by the Orencia she took *after* taking Enbrel cannot be credited.[62]  *See Scott v. Cal. African Am. Museum*, 2015 WL 12803454, at *3 (C.D. Cal. Feb. 23, 2015) ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as false and sham." (internal quotation marks omitted)).[63]  This is particularly so where Amburgey maintains the contradictory allegation that such infections "are a well-known side effect of Enbrel" and cites the manufacturer's instructions regarding *functioning* Enbrel.[64]  *Cf. Herrera v. County of Los Angeles*, 482 F. App'x 263, 265 (9th Cir. 2012) (finding that a claim was "not plausible" under Rule 12(b)(6) where its key "allegation is repeatedly contradicted by other allegations" in the complaint).

---

[62]  Complaint ¶ 78; *see also id.* ¶¶ 68–69 (Amburgey trying Orencia in 2016, after discontinuing Enbrel in 2015).

[63]  Caremark acknowledges that there is an intra-Circuit split of authority on this issue.  *Compare United States ex rel. Lee v. Corinthian Colls., Inc.*, 655 F.3d 984, 995 (9th Cir. 2011) (holding that amendment of a complaint is improper when the additional factual allegations contradict those in a prior complaint), *and Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (same), *with PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) (allowing subsequent amendment to contradict prior factual allegations).  Caremark submits that *PAE* is an outlier and its permissive approach is particularly inappropriate here, where Plaintiffs' change of position is wholly unexplained and comes in a pleading that is replete with other factual allegations for which Plaintiffs lack any good-faith basis.  *See, e.g.*, *ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*, 333 F. App'x 994, 1003 (6th Cir. 2009) (proper to deny leave to amend where amendments were "a thinly veiled tactical maneuver to essentially refute its prior allegations … an about-face that would unfairly prejudice defendants and that calls into question ABS's compliance with Federal Rule of Civil Procedure 11(b), which requires that pleadings submitted to the court be nonfrivolous and made in good faith").

[64]  Complaint ¶ 77 ("According to the manufacturer, 'Infections, including serious infections, some fatal, have been observed in patients treated with ENBREL.'").

---

15

DEFENDANT'S MOTION TO DISMISS

1    Even if Amburgey's allegations are accepted, she still alleges that the infection

2    likely arose "during the time she was taking Enbrel."[65]  But Amburgey never received

3    Enbrel from Caremark.  Amburgey thus premises her claimed personal-injury harm

4    on an allegation that she had an infection, a disclosed, normal side effect of

5    functioning Enbrel that she received from another source, but, on "information and

6    belief," the Orencia that she later took "caused and/or exacerbated" that infection in

7    unspecified ways, for unspecified reasons, as a result of "some or all" of that Orencia

8    *possibly* having exceeded a temperature range in transit.  This chain of speculation

9    cannot support standing.  *See Birdsong*, 590 F.3d at 961 (standing cannot be premised

10   on an alleged injury that is "conjectural and hypothetical").

11   **II.    THE COURT LACKS PERSONAL JURISDICTION.**

12       Plaintiffs not only lack any basis for asserting that Caremark is the proper

13   defendant in this case,[66] they also lack any basis for their claim that the Court has

14   personal jurisdiction over Caremark.[67]  And even if Plaintiffs had sued the right

15   defendant, Washington makes no allegation to support the exercise of personal

16   jurisdiction over her claims.

17       "California's long-arm statute allows the exercise of personal jurisdiction to the

18   full extent permissible under the U.S. Constitution."  *Daimler AG v. Bauman*, 134 S.

19   Ct. 746, 753 (2014).  Under this analysis, plaintiffs "bear[] the burden of

20   demonstrating that jurisdiction is appropriate."  *Schwarzenegger v. Fred Martin*

21   *Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

22       **A.    The Court Lacks General Jurisdiction.**

23       General jurisdiction is available only over corporations whose "'affiliations

24   with the State are so continuous and systematic as to render them essentially at home

---

[65]  *Id.* ¶ 76.

[66]  Part I.A., *supra*.

[67]  Plaintiffs have not named ProCare as a defendant, so Caremark does not repeat its personal-jurisdiction arguments as to ProCare.  *See* D.E. 32 (Mot. To Dismiss SAC) at 14–18; D.E. 48 (Reply in Supp. of Mot. To Dismiss SAC) at 13–17.

in the forum State.'"  *Daimler AG*, 134 S. Ct. at 754 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  A corporation's "place of incorporation and principal place of business are" therefore "paradigm bases for general jurisdiction."  *Id.* at 760 (alterations and internal quotation marks omitted).  Caremark is organized under the laws of Delaware and has its principal place of business in Arizona,[68] meaning that these bases for general jurisdiction are lacking in this case.  Caremark does not have other significant contacts with California, either.  As set forth in the first Declaration of Thomas S. Moffatt, Caremark has no California operations and no employees in the State of California,[69] much less the scale of operations that would render it "'essentially at home'" in California.  *Id.* at 754 (quoting *Goodyear*, 564 U.S. at 919).  Further, as discussed in Part I.A, *supra*, Plaintiffs' contention that the Redlands, California specialty pharmacy is operated by Caremark,[70] is both irrelevant—because no plaintiff received any shipment from the Redlands, California pharmacy—and incorrect because that pharmacy is operated by a wholly distinct entity.  There is therefore no basis to claim that the Court has general jurisdiction over Caremark.

### B.  The Court Lacks Specific Jurisdiction.

"In order for a court to have specific jurisdiction over a defendant, 'the defendant's suit-related conduct must create a substantial connection with the forum State.'"  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).  The Court lacks specific jurisdiction because the record is clear that Caremark had no involvement in the

---

[68]  First Moffatt Decl. ¶ 4.
[69]  *Id.*
[70]  D.E. 41 (Opp'n to Mot. to Dismiss SAC) at 9–10.

DEFENDANT'S MOTION TO DISMISS

shipment of any drugs to either patient.[71]  Even if Caremark had been involved in the shipments about which Plaintiffs sue, the Court lacks specific jurisdiction over Washington's claims because they have nothing to do with California.  Her claims are based on her purchase, receipt, and use of Enbrel in Wisconsin and the shipment of Enbrel to her from the specialty pharmacy located in Pennsylvania.[72]

When no suit-related conduct with a connection to the forum State is alleged, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001) (per curiam) (determining whether the appropriate suit-related connection to the forum was present by "apply[ing] a 'but for' test," which "considers whether plaintiffs' claims would have arisen but for [the defendant's] contacts with California" (quoting *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995))).  Nothing in the Complaint supports the argument that Washington's claims are dependent upon any California contact.

Nor may Washington rely on any argument that Amburgey or others have suffered similar harms that do have a connection to California.  The Supreme Court recently found that specific jurisdiction was not appropriate over claims of "nonresidents [who] were not prescribed [the drug] in California, did not purchase [it] in California, did not ingest [it] in California, and were not injured by [it] in California," even if "*other* plaintiffs were prescribed, obtained, and ingested [the drug] in California—and allegedly sustained the same injuries as did the nonresidents."  *Bristol-Myers Squibb*, 137 S. Ct. at 1781.[73]  Similarly here, the

---

[71]  All of the shipments that Amburgey and Washington received came from the specialty pharmacy in Monroeville, Pennsylvania.  *See* First Peterman Decl. ¶¶ 7–8.  That facility is owned and operated by ProCare.  *See* First Moffatt Decl. ¶ 5.

[72]  Complaint ¶¶ 32, 44.

[73]  The same Fourteenth Amendment Due Process analysis the Supreme Court applied in *Bristol-Myers Squibb* applies to a federal court's exercise of jurisdiction over a diversity case in which no federal statute governs personal jurisdiction.  *See*

---

18

DEFENDANT'S MOTION TO DISMISS

Wisconsin class includes Wisconsin residents like Washington who were prescribed
Enbrel or Orencia, purchased it, received it, and used it in Wisconsin.[74]  The only out-
of-Wisconsin allegation connected to Washington's claims is the allegation that she
received her shipments from Pennsylvania.[75]  As in *Bristol-Myers Squibb*, "[w]hat is
needed—and what is missing here—is a connection between the forum and the
specific claims at issue."  137 S. Ct. at 1781.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Independent of the defects described in Parts I and II, the Complaint fails to
allege viable claims for relief.  In its Order dismissing the Second Amended
Complaint for lack of standing, the Court cautioned that Plaintiffs "would be well-
advised to consider" these other arguments in any amended complaint.  D.E. 47
(Sept. 21, 2017 Order) at 7 n.3.  The Third Amended Complaint only minimally
responds to these arguments.  Plaintiffs' claims in the Third Amended Complaint are
therefore deficient for the same reasons they were deficient in the Second Amended
Complaint (and the First Amended Complaint, and the initial Complaint).

As before, it is Plaintiffs' responsibility to "aver in the complaint 'sufficient
factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"
*Tracht Gut, LLC v. L.A. Cty. Treasurer & Tax Collector (In re Tracht Gut, LLC)*, 836
F.3d 1146, 1151 (9th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
1068, at 688 (4th ed. 2015) ("[W]hen a federal court relies on a state long-arm
statute pursuant to Rule 4(k)(1)(A), personal jurisdiction must also be consistent
with the Fourteenth Amendment due process principles that would apply in state
court."); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir.
2006) ("Exercise of *in personam* jurisdiction over an out-of-state defendant is
limited by the Due Process Clause of the Fourteenth Amendment.").

[74]  Complaint ¶¶ 32, 153.

[75]  Caremark has confirmed that all of Washington's shipments were from the
Monroeville, Pennsylvania location.  First Peterman Decl. ¶ 8.

DEFENDANT'S MOTION TO DISMISS

(2009)).  Further, because Plaintiffs' consumer-protection claims are grounded in allegations that Caremark made fraudulent misrepresentations, the complaint also "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b)[76]—namely, "'the who, what, when, where, and how of the misconduct charged.'"  *Kearns*, 567 F.3d at 1124 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  The Complaint fails that test.

### A.      Plaintiffs Fail To Allege False Representations.

The Complaint alleges four misrepresentations:  (1) a statement that the melting of the ice pack can be expected; (2) a logo of a penguin crossed through (supposedly signifying that the contents "ha[ve] not been frozen and should not be frozen"); (3) a notice inside the package that the shipping procedure was "new and improved," "does even more" to keep drugs cold, and exceeds "industry standards"; and (4) a "REFRIGERATED" label.[77]  The third is mere puffery that cannot support a claim under the UCL or CLRA.  *See Edmundson v. Procter & Gamble Co.*, 537 F. App'x 708, 709 (9th Cir. 2013) (statements are "non-actionable puffery" when they are "general, subjective, and cannot be tested").

As to the other alleged misrepresentations, Plaintiffs' theory of why—or even whether—they were false has shifted.  In opposing Caremark's prior Motion, Plaintiffs argued that the various representations—including the Penguin logo and "REFRIGERATED" label—were "storage instructions."[78]  Storage instructions are

---

[76]   Rule 9(b) applies to Plaintiffs' consumer-protection claims.  Rule 9(b) applies to California CLRA and UCL claims to the extent they are "grounded in fraud" or "allege that the defendant engaged in fraudulent conduct."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Courts have suggested that "[b]ecause a claim under the [Wisconsin] DTPA sounds in fraud, it must be pleaded with particularity."  *Miller v. Vonage Am., Inc.*, 2015 WL 59361, at *5 (E.D. Wis. Jan. 5, 2015).  Plaintiffs specifically allege "fraudulent" conduct by Caremark and their allegations are therefore subject to Rule 9(b).  Complaint ¶¶ 200–220, 239.

[77]   *Id.* ¶¶ 117–118, 120.

[78]   D.E. 41 (Opp'n to Mot. To Dismiss SAC) at 13.

DEFENDANT'S MOTION TO DISMISS

not misrepresentations about the product being sold, however.  Rather, they are statements about how a product should be handled *in the future*.  In any event, Plaintiffs have not alleged how these representations are false.  To state a misrepresentation claim under the UCL and CLRA, Plaintiffs must allege how members of the public are "likely to be deceived."  *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 562 (9th Cir. 2008) (quoting *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008)).  Plaintiffs' proposed readings of the various representations are untenable.  They do not explain how anyone could reasonably understand a statement that the melting of an ice pack can be expected as an assertion "that the Specialty Drug was shipped appropriately,"[79] or that a logo of a crossed-out penguin could reasonably be read as a statement that the drug "has not been frozen and should not be frozen, as well as an instruction to keep [it] refrigerated."[80]  There are therefore no allegations to support the suggestion that the representations were likely to deceive.

**B.     Amburgey Fails To Allege Reliance.**

Claims under the California consumer-protection laws require that a plaintiff show that she relied on the alleged misrepresentation.  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793–94 (9th Cir. 2012).  Although an inference of reliance may arise under certain circumstances, any such inference is defeated when the record conclusively "establishes an actual lack of reliance."  *Lanovaz v. Twinings N. Am., Inc.*, 2014 WL 46822, at *3 (N.D. Cal. Jan. 6, 2014); *see also Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017) ("[A] plaintiff cannot use that presumption, if the evidence establishes an actual lack of reliance." (internal quotation marks omitted)).  Amburgey not only failed to allege that she relied on any representations by Caremark, she affirmatively pleaded facts showing that she did not rely on any such representations.

---

[79]   Complaint ¶ 117.
[80]   *Id.*

DEFENDANT'S MOTION TO DISMISS

The Complaint makes clear that Amburgey did not rely on the alleged representations in connection with Enbrel (which, in any event, she did not receive from Caremark).  Even if those representations had made the factual assertions that she claims (wrongly) they made, this would have led her to assume the Enbrel was in the defined temperature range.[81]  Contrary to claiming any reliance on representations about the temperature of the Enbrel, she alleges that "[s]everal shipments" were frozen and she "allowed the Enbrel to thaw" before administering it.[82]  *See Princess Cruise Lines, Ltd. v. Super. Ct.*, 179 Cal. App. 4th 36, 43–44, 46 (2d Dist. 2009) (reliance rebutted when plaintiffs admitted that alleged misrepresentations about the costs and operation of a service "made no difference to them").[83]

As for Orencia, the Complaint alleges that it was shipped to Amburgey's doctor, which means that she never saw the alleged misrepresentations.[84]  California's consumer-protection laws do "not allow a consumer who was never exposed to an alleged false or misleading advertising campaign to recover damages." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (alteration and internal quotation marks omitted); *see also Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1046–47 (N.D. Cal. 2014) (dismissing UCL and CLRA claims for failure to plead reliance where the plaintiff's "allegations of reliance were inadequate" because she "did not allege that she relied on the statement" or even "read the particular representations she alleged were misleading").

---

[81]  *Id.* ¶ 117 (alleging that one misrepresentation was "[a] logo of a penguin crossed out, which represents that the Specialty Drug has not been frozen and should not be frozen").

[82]  *Id.* ¶ 61.

[83]  Although beyond the scope of this motion, Caremark notes that Amburgey's concession that the alleged misrepresentations had no impact on her behavior undermines both the typicality of her claims and her adequacy to serve as a representative of the putative class.  *See* Fed. R. Civ. P. 23(a)(3), (4).

[84]  Complaint ¶¶ 74, 86.

DEFENDANT'S MOTION TO DISMISS

1    In opposing Caremark's prior Motion, Amburgey argued that this does not

2    matter because she "was entitled to rely on her doctor's belief that the Orencia was

3    shipped and stored properly b[y] Defendant."[85]  But the Second Amended Complaint

4    did not allege that Amburgey's doctor saw the alleged misrepresentations, relied on

5    them, or communicated them to Amburgey, and the Third Amended Complaint

6    similarly lacks any allegation of reliance by Amburgey's doctor.[86]  Any purported

7    claim for indirect misrepresentation would not save Amburgey's claims, for "indirect

8    reliance requires pleading: (1) 'a misrepresentation to a third party,' (2) that

9    'defendant intended or had reason to expect that the substance of the communication

10    would be repeated to the plaintiff and would induce the plaintiff's reliance,' and (3)

11    that 'plaintiff was misled when the substance of the communication was repeated to

12    plaintiff.'"  *Friedman v. Mercedes Benz USA LLC*, 2013 WL 8336127, at *4 (C.D.

13    Cal. June 12, 2013) (quoting *Bullock v. Philip Morris USA, Inc.*, 159 Cal. App. 4th

14    655, 676 (2d Dist. 2008)).  The Third Amended Complaint not only alleges nothing

15    about Amburgey's doctor relying on any representations by Caremark, it also does

16    not allege that Amburgey's doctor communicated the representations to her or that

17    Caremark intended he do so in order to induce her reliance.

18    **C.    Washington Fails To Allege Causation.**

19    The Third Amended Complaint contains no allegation that Washington

20    noticed, or acted on, any alleged misrepresentation.  This is fatal to her claims under

21    the Wisconsin consumer-protection law, which requires that she show that the alleged

22    misrepresentation "materially caused" her loss.  *K & S Tool & Die Corp. v.*

23    *Perfection Mach. Sales, Inc.*, 732 N.W.2d 792, 803 (Wis. 2007) ("material

24    inducement" is shown if the misrepresentation was "a significant factor contributing

---

[85]  D.E. 41 (Opp'n to Mot. to Dismiss Second Am. Compl.) at 14.

[86]  Plaintiffs' allegation that "[b]y knowledge and belief, when physicians prescribe Enbrel and Orencia they assume that the drug will be shipped and stored properly," Complaint ¶ 19 (emphasis added), has nothing to do with whether Amburgey's doctor relied on any representation by Caremark.

23

to" the decision (internal quotation marks omitted)); *Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659, 663 (W.D. Wis. 2009) ("[T]he question is whether the representation … materially *induce[d] the plaintiff's decision to act* and [whether the] plaintiff would have acted in the absence of the representation." (second, third, and fourth alterations in original) (internal quotation marks omitted)).

### D.   Washington Fails To Allege Affirmative Representations.

Washington cannot base her claim on alleged omissions, either, because the Wisconsin consumer-protection law "does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading."  *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004); *see also, e.g.*, *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1126 (E.D. Wis. 2016) ("Wisconsin courts have placed certain limits on the type of actionable representations that may be remedied under the statute," including "that 'silence—an omission to speak—is insufficient to support a claim.'" (brackets omitted) (quoting *Tietsworth*, 677 N.W.2d at 245)).  Washington did not dispute that this is an accurate statement of Wisconsin law.[87]  Nevertheless, in another example of Plaintiffs' willingness to stand by allegations for which they lack a good-faith basis, Washington continues to premise her claim entirely on alleged omissions.[88]

### E.   Washington Fails To Allege a Misrepresentation to "The Public."

In addition to her failure to allege causation and her improper reliance on alleged omissions, Washington also failed to allege that the "misrepresentations" about which she sues were made to "the public" as required by Wisconsin's consumer-protection law.  If "a particular relationship exists between" the plaintiff and the defendant, any representations made to the plaintiff are not actionable representations made to "'the public.'"  *K & S Tool & Die Corp.*, 732 N.W.2d at 800.  The rationale behind this rule is that there is a distinction between representations

---

[87]  D.E. 41 (Opp'n to Mot. to Dismiss SAC) at 15–16.
[88]  Complaint ¶¶ 238, 241, 245, 246.

24

DEFENDANT'S MOTION TO DISMISS

1   made to obtain new business (which are covered by the law) and representations

2   made to existing business partners with whom a company has preexisting, regular

3   dealings (which are not).  *See Bates v. Wis. Dep't of Workforce Dev.*, 375 F. App'x

4   633, 636 (7th Cir. 2010) (affirming dismissal for failure to allege a representation to

5   "the public" where "the undisputed facts demonstrate that the discussions about grant

6   funding occurred only after Bates was accepted as a client of the [defendant]"

7   (internal quotation marks omitted)); *Cousin Subs Sys. Inc. v. Better Subs Dev. Inc.*,

8   2011 WL 4585541, at *10 (E.D. Wis. Sept. 30, 2011) (dismissing claim where

9   representations "were not made to the public as a whole" but instead "were made on

10   an individualized basis … through emails, phone conversations, and face to face

11   meetings where the parties already had established an ongoing relationship").  The

12   "misrepresentations" Washington alleges were not made to induce new business,

13   because she was already a customer of Defendant—by her own allegation, her

14   "insurer, UnitedHealthcare, ***requires*** her to obtain specialty drugs like Enbrel from

15   Caremark's specialty pharmacy."[89]  She therefore is not a member of "the public"

16   whom the Wisconsin consumer-protection law is intended to protect.

## CONCLUSION

18       The Third Amended Complaint should be dismissed in its entirety.

19   Dated:  October 23, 2017

---

[89]   Complaint ¶ 44 (emphasis added).

DEFENDANT'S MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

**FOLEY & LARDNER LLP**

By: _____/s/ Tami Smason_____

Tami Smason

WILLIAMS & CONNOLLY LLP
F. Lane Heard III*
Enu Mainigi*
J. Andrew Keyes*
Holly Conley*
Benjamin Hazelwood*
* Admitted pro hac vice

*Attorneys for Defendant CaremarkPCS Health, L.L.C.*

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notifications of such filing to the following:

Caleb Marker                    Caleb.Marker@zimmreed.com


By:     _____*/s/ Tami Smason*_____
Tami Smason
FOLEY & LARDNER LLP